# HELENA NATIONAL BANK, Respondent, *v.* ROCKY MOUNTAIN TELEGRAPH CO., Appellant.

[Submitted November 16, 1897. Decided January 17, 1898.]

## TWO CASES.

*Pleading—Denial of Agency—Agent—Power to Execute Negotiable Paper—Implied Power to Pledge Credit—Question of Law.*

1. PLEADING—*Denial of Agency.*—In an action against a corporation, the complaint alleged that the note sued upon was executed by the defendant; the answer denied that the defendant executed the note, and denied that the person who signed the defendant's name to the note was authorized to do so. *Held,* that the ultimate fact, the making of the note by the defendant, was properly alleged in the complaint and that the allegation in the answer to the effect that the note was signed by one who had no authority to do so, was matter of evidence and not of pleading, and no denial of the same by replication was necessary.

2. POWER OF AGENT TO EXECUTE NEGOTIABLE PAPER.—An agent with general authority to manage his principal's business has no implied authority to bind his principal by a promissory note; such authority must be expressly conferred, or be necessarily implied from the exigencies and the general course of the particular employment, or the act must be ratified by the principal.

3. SAME.—The fact that the agent of a telegraph company had full power to manage its business and make all necessary contracts and arrangements in carrying on and operating its business, does not authorize him to execute negotiable paper in the name of the company, neither was such power necessarily implied from the exigencies or general course of business connected with the operation of a telegraph line; and the fact that the agent drew checks against the funds of the defendant, does not tend to establish power to execute a promissory note.

4. SAME.—The fact that the agent, on three different occasions, had executed such notes in the defendant's name, does not show such authority, when it further appears that the defendant had no knowledge of the same until after the agency had ceased.

5. AGENT—*Implied Power to Pledge Credit.*—Where it appears that the agent of a telegraph company had full power to manage its business and make all contracts and arrangements to carry on its business; that the principal knew that the monthly receipts of the business were much less than the expenses, and that it was necessary for the agent to maintain a bank account in its name, such agent has implied authority to borrow for the company an amount of money not disproportionate to the volume of business transacted.

6. QUESTION OF LAW.—Where the facts are admitted or undisputed, the only questions presented for decision are those of law.

*Appeal from District Court, Lewis and Clarke County. Henry N. Blake, Judge.*

Two separate actions by the Helena National Bank against the Rocky Mountain Telegraph Company. Verdict for plaint-

iff in each action.    Defendant appeals from orders denying a new trial.    One order reversed, and the other affirmed.

Statement of the case by the justice delivering the opinion.

These actions were tried together in the court below, and will be determined by this court in one opinion.

By action No. 877, the plaintiff sought to recover from the defendant (a corporation organized under the statutes of Montana) the sum of $350.70, the amount of an alleged overdraft of the defendant at the Second National Bank of Helena, Montana, the claim for which was assigned by said bank to plaintiff.

The answer was treated and considered by the parties and the court below as sufficient to present the issues whether the general manager of the defendant was authorized expressly or by implication to create an overdraft, and whether there was a ratification by the defendant of the acts of its general manager in that behalf.    By what the defendant calls a "separate defense" to the complaint, it alleges that on or about the 7th day of November, 1892, the plaintiff advanced to one C. W. Ridgway a certain sum of money, which, at the request of Ridgway, plaintiff charged to the defendant, and that Ridgway never had authority to borrow the money on behalf of the defendant; that the money so advanced to Ridgway was used by said Ridgway for his own benefit, and was never paid to or received by the defendant.

By the complaint in action No. 878, plaintiff sought to recover from defendant the amount of a negotiable promissory note for $200, alleged to have been made by the defendant on October 27, 1892, to the Second National Bank of Helena, and by the payee assigned to the plaintiff, which note contained a promise to pay interest at the rate of 1 per centum per month from its date, and reasonable attorney's fees.    The note was subscribed, "Rocky Mountain Telegraph Company, by C. W. Ridgway, G. M."

The answer denies that the defendant executed the note, and, by a so-called "separate defense," denies that Ridgway,

who, as general manager, subscribed defendant's name to the note, was authorized so to do, and that the money obtained by him was not received by defendant, but was appropriated by him to his own use.

The replication consists of a denial that the money obtained on the note was appropriated by Ridgway to his own use, and was not paid to or received by the defendant.

At the trial, the defendant moved in each case for judgment on the pleadings, which motions were denied. The issues were tried by jury. When plaintiff rested, the defendant moved for nonsuits, upon the ground that the evidence did not tend to prove any authority on the part of Ridgway to execute the note in the name of the defendant, or to create the overdraft in its behalf. The court overruled each motion. The defendant offered no testimony in either case. The jury returned a verdict for the plaintiff. From the orders denying defendant's motions for new trials, these appeals were taken.

Defendant was organized in 1886. Of the three trustees named in the certificate, one died in 1887 or 1888. The evidence failed to disclose whether or not shareholders or directors ever held a meeting after the formation of the corporation. It was both proved and admitted that from April, 1891, to November 30, 1892, Ridgway was the general manager of defendant corporation, and that he executed and delivered the note and created the overdraft in the name of the defendant. It was also shown by the evidence that in 1891, when Ridgway first took charge of the business of the Company, its bank account was kept in Butte, and was overdrawn in the sum of $554.54, all of which the defendant knew. Competent evidence was adduced establishing the fact that Ridgway conducted and transacted all the ordinary business affairs of defendant, and disclosing that the defendant, during the time that Ridgway was its general manager, necessarily had full knowledge, or ought to have known, that the receipts of its business were not equal to its outlay, and that Ridgway, as its general manager, was in the habit of making monthly re-

ports to one W. A. Clark and to one Marcus Daly, or to Clark and the Standard Publishing Company, of Anaconda, which reports disclosed the difference between the receipts of the defendant and its outlay for each month, the deficit being sometimes as great as $1,000; that these reports to Clark and Daly did not show the condition of defendant's bank account, nor contain any information as to the note in suit, but did show the aggregate local receipts and expenses; that when Clark and Daly received such reports, each would send his check to Ridgway for one-half of the monthly deficit, it being understood that the checks were to pay the debts incurred by reason of the deficit; and that Ridgway, as general manager, received his instructions as to the conduct of the business from Clark and Daly, who, as the evidence would indicate, were in control of the corporation.     It appeared in evidence that some, at least, of these reports, were filed with defendant's auditor.

Over objection and exception of the defendant, the court admitted evidence to the following effect :   That when Ridgway, on March 18, 1892, opened the account for defendant with the Second National Bank of Helena, he exhibited to the cashier of the bank a paper purporting to be an authority from said Daly and Clark, authorizing him, as general manager of the defendant, to transact its business in Helena ; and that afterwards, about May 26th, Ridgway showed to the cashier a document executed by Clark and the Standard Publishing Company, of Anaconda, of which the following is a copy :

"Know all men by these presents :   That we, the undersigned, W. A. Clark, of Butte, Montana, and the Standard Publishing Company, of Anaconda, Montana, the members of the firm doing business under the name of the Rocky Mountain Telegraph Company, said business being carried on in the state of Montana, do hereby certify that C. W. Ridgway has been duly appointed by the undersigned as the general manager of said Rocky Mountain Telegraph Company, with full power to manage the business thereof, make all necessary contracts and arrangements for carrying on and operating said business, col-

lect all amounts due said Rocky Mountain Telegraph Company from any and all persons and the government of the United States, and to receipt for same as general manager. Any payment made to him as such general manager shall be considered and held by the undersigned as duly paid to said Rocky Mountain Telegraph Company. That said C. W. Ridgway has been appointed as such general manager, as the successor of L. O. Leonard.''

Evidence was also admitted to show that the first overdraft was on April 22, 1892, and that the original note, of which the note in suit is a renewal, was made February 12, 1892.

Against the objection of defendant, evidence was admitted showing that Ridgway, on October 27, 1892, succeeded in discounting at the American National Bank of Helena a note for $150, made by him in the name of the defendant company, indorsed by one Hawk, who afterwards succeeded Ridgway as manager, and upon maturity of which note the bank mailed a notice to the defendant at Helena ; and that on April 15, 1893, the note was paid by Hawk, who was then the general manager. Proof was made from the books of the defendant that the bank credited Hawk, as general manager, with the amount so paid by him, and also with the amount of a note made by Ridgway, in the name of the defendant, to the Merchants' National Bank, which note Hawk had paid also, and that the defendant, after Ridgway left its employ, charged the several amounts of these notes against Ridgway's personal account ; that on March 17, 1892, Ridgway gave to the first National Bank of Helena a note, executed by him in the name of the defendant, for $150, which note was paid June 9, 1892; and again, in the following July, gave a like note in defendant's name, which, after several renewals, resulted in his making a note in the name of the company for $50.55, which at the time of the trial remained unpaid, but on which were endorsed several small credits, ranging from 31 cents to $1.25, the items representing certain bills for telegraph service rendered by defendant to the First National Bank, and which it was agreed should be indorsed as partial payments upon the note.

When Ridgway left the service of the defendant, on November 30, 1892, its books disclosed an indebtedness by defendant to Ridgway of $282.27. This amount was consumed by charging it to Ridgway on account of the payment of the notes mentioned, made by him in the name of the company to the Merchants' and American National Banks. It was established by evidence, which went in without objection, that Ridgway, as general manager, was in the habit of reporting to Clark and Daly, who were evidently acting with the consent of and for the defendant, the incurring of debts for necessary running expenses and outlay each month, and that it was only after being notified as to the amount of the deficit that the defendant, through Clark and Daly, or Clark and Daly themselves, remitted funds to cover the excess of outlay over receipts.

*Clayberg & Corbett* and *J. B. Wellcome*, for appellant.

The following general propositions of law would seem to be conclusive in this case : It is well settled that no presumption of authority to sign notes or to create an overdraft binding upon a corporation. arises from proof that the person so acting was the general manager of the corporation. (Thompson on Corp. Section 4851 ; *Western National Bank* v. *Armstrong*, 152 U. S. 346 ; *Elwell* v. *Puget Sound Ry. Co.*, 35 Pac. 376 ; *New York, etc. Mine* v. *Bank*, 39 Mich. 644.) The burden of proof is on the person claiming the existence of such authority, to show either previous authority from the corporation, or a subsequent ratification by the corporation. (Thompson on Corp. Sections 4851–4959 ; *Oak Grove, etc. Coal Co.* v. *Foster*, 41 Pac. 522.) Such authority or ratification must come from the board of trustees or directors of the corporation, acting as a board. It is not sufficient to show that individual members of the board, or of the corporation, gave the authority, or ratified the act. (Thompson on Corp Section 4875.) While authority to execute notes and create overdrafts may be presumed from the habits of the general manager in that regard, it must be shown that the corporation had knowl-

edge of such habits and acquiesced therein.· Isolated cases are not sufficient to show such habits.    (Thompson on Corp. Sections 4884, 4886–4965 ; *Davis* v. *Rockingham*, 15 S. E. 547.) While authority may be presumed from the custom of the defendant in allowing its general manager to make notes and create overdrafts or paying the same, such custom cannot arise unless proof is made of the knowledge of the corporation that such notes are given and such overdrafts created by the general manager, and that they were paid by the corporation. Mere payment at the hands of the corporation by the general manager without knowledge thereof on the part of the corporation, would not be sufficient.    There can be no ratification of an unauthorized act by a corporation without full knowledge of all the facts concerning the same.    Upon these principles see generally :    *Western National Bank* v. *Armstrong*, 152 U. S. 346 ; *Morris* v. *Griffith*, 69 Fed. 131 ; *Geyer* v. *King*, 34 S. W. 89 ; *Oak Grove, etc. Coal Co.* v. *Foster*, 41 Pac. 522 ; *Edwards* v. *Carson W. Co.*, 34 Pac. 391 ; *Elwell* v. *Puget Sound Ry.*, 35 Pac. 376 ; *Bliss* v. *Kaweah Canal, etc. Co.*, 65 Cal. 502 ; *Croft* v. *South Boston Ry.*, 150 Mass. 207; *Torrey* v. *Dustin Co.*, 5 Allen 327; *Victoria, etc. Co.* v. *Frazier*, 29 Pac. 667; *Railroad National Bank* v. *Lowell*, 109 Mass. 214 ; *New York, etc. Mine* v. *Bank*, 39 Mich. 644 ; *Davis* v. *Rockingham*, 15 N. E. 547 ; *Mathias* v. *White Sulphur Springs Association*, decided by the Supreme Court of Montana April 12th, 1897.

*Toole & Wallace*, for Respondents.

''Evidence on an issue of apparent authority of an agent is not restricted to proof of general custom with regard to agencies of the same character, or to the proof that the agent had previously performed similar acts to the knowledge of the principal and the person dealing with the agent, or that a similar agent had performed such acts in the past.''  (*Johnson* v. *Milwaukee, etc.*, 64 N. W. 1100 ; *First Natl., etc.* v. *Redpath*, 96 N. W. 37 ; *Gonnan* v. *Dodge*, 41 N. E. 397.)  Appellant knew it had but two general managers of its business ;

it knew that one was located at Butte and one at Helena; it knew from the very nature of things that a bank account at both places was necessary and proper ; it knew that these accounts would be opened and the transactions had through its general managers ; it knew that the receipts of its business were not equal to its outlay; it knew that the bank had a right to vouchers for overdrafts ; it knew or ought .to have known that it would be charged with notice of the items of the account of its agent for whose integrity they vouch, when acting within the scope of his powers or apparent powers, and indeed from the whole facts contained in the record, too numerous to be detailed herein, the liability of appellant is established under the principles announced in the following cases : *H. Y. & Co.* v. *Schuyler et al.*, 24 N. Y. 30 ; 13 N. Y. 599, 634 ; *Lungstrass* v. *German Ins. Co.*, 57 Mo. 107 ; *Merchants' Bank* v. *State Bank*, 10 Wall. 604, 674 ; *Creeder* v. *Loud & Son*, 24 Am. St. R., 134 ; Commentaries on the Law of Corporations, Thompson, 4894, 4883, 4885, 4881, 4882 ; *Bench* v. *John Hancock, etc.*, 34 N. Y. 16, 30 ; 11 N. Y. Supp. 714 ; *Glidden* v. *Interstate, etc.*, 69 F. 912 ; 16 C. C. of A. 534.

PIGOTT, J.—(1) Appellant (defendant) contends that its motion for judgment on the pleadings in action No. 878 should have been sustained, upon the ground that the replication did not deny the averment in the answer of want of authority in Ridgway to execute the note in its behalf; the theory being that such averment was new matter, constituting a defense, and therefore admitted for want of denial.

We are satisfied that the averment is not new matter. Ultimate facts only should be pleaded. Plaintiff pleaded the ultimate fact according to its legal effect, by alleging that defendant made the note. This ultimate fact the defendant denied. Corporations necessarily act entirely through agents in all transactions having no relation to the corporation in its corporate capacity, and, under the statement that the corporation executed the note, plaintiff would have been entitled to

prove that any authorized agent of the corporation issued the paper in its behalf. The denial in the answer raised the issue whether the note was executed by the corporation through any authorized agency. It was not necessary in law, under the issue raised by the averment and denial of the making, for plaintiff to prove that Ridgway had authority to act; and the so-called "separate defense" was, in legal effect, but a claim that one certain person was without legal authority to perform that which plaintiff charged the corporation with doing; *non constat* that some duly-empowered agent did not deliver the note. As a matter of pleading, as distinguished from evidence, it was unimportant whether or not Ridgway possessed the power to bind the corporation. The manner, as well as the means, of execution, is mere evidence. That portion of the answer setting up so-called "separate defense" consists of evidential matter, the proof of which might or might not become material on the trial. Viewing it in the light most favorable to defendant, the separate defense pleaded was wholly evidence and therefore redundent. Nor might defendant, by answer, limit the issue to the question of Ridgway's authority.

We have dwelt upon this question of pleading for the reason that appellant has so strenuously and seriously defended its position

The issues made by the pleadings in No. 878 were, upon trial, narrowed to the question whether Ridgway was clothed with authority to make the note in defendant's name, and whether, in the absence of such authority, the defendant ratified his act in its behalf. If there was any substantial evidence tending to prove such authority or such ratification, the duty would devolve upon this court to determine the many errors claimed to have been committed by the court below in admitting evidence, unless, under the competent evidence, the jury, as a matter of law, ought to have found for plaintiff.

Upon careful consideration of all the evidence in the record, we are of opinion that plaintiff failed to make a case for the jury, and the court should have granted the motion for non-

suit.    An agent with general authority to manage his principal's business has, by virtue of his employment, no implied authority to bind his principal by making a negotiable instrument.    Such authority must be expressly conferred, or be necessarily implied from the exigencies and the general course of the particular employment, or the act must be ratified by the principal.    (See Mechem, Agency § 398.)    This rule is applicable to the managing agent or general manager of a nontrading corporation, as well as to the agent of natural persons.    (*Oak Grove Cattle Co.* v. *Foster,* (*N. M.*) 41 Pac. 523 ;. *Edwards* v. *Carson Water Co.* (*Nev.*) 34 Pac. 381 ; Thomp. Corp. § 4850.)    The power given to the business manager of such a corporation to transact its business does not authorize him to bind the corporation as maker of a negotiable note. (*Culver* v. *Leovy,* 19 La. Ann. 202 ; *Oak Grove Cattle Co.* v. *Foster, supra.*)    The English rule is even more strict than the American.    (See *In re* Cunningham, 36 Ch. Div. 532.) ·

Argument is not needed to show the extraordinary and well-nigh unlimited power conferred upon an agent who has authority to make negotiable notes in his principal's name. An agent with such authority has, for practical purposes, full power to wreck the corporation by putting out its paper; to which paper, in the hands of a good-faith endorsee before maturity, no defense can be made.

As said by Mr. Justice Cooley in *New York Iron Mine* v. *First National Bank,* 39 Mich. 644, (a case involving questions akin to those arising in the case at bar) :    "The issuing of promissory notes is not a power necessarily incident to the conduct of the business of mining, and it is so susceptible of abuse, to the injury, and, indeed, to the utter destruction of a corporation, that it is wisely left by the law to be conferred, or not, as the prudence of the board of directors may determine."    .

The doctrine approved by us finds clear expression in the opinion of the Supreme Court of Arkansas in *Geyer* v. *King,* 34 S. W. 89..    The opinion in that case contains a review of the authorities, and a thorough exposition of the principles applicable to the case at bar.

The presumption of law is more strongly opposed to an implied authority to execute negotiable instruments than to do anything else, and even where there is a general authority "to transact all business" or "to do all lawful acts concerning all the principal's business of whatever nature or kind soever," it is very generally held that the power to execute bills or notes is not included.   (Tiedeman on Com. Paper, §77.)

The case at bar is to be distinguished in its facts, or upon principle, from all the cases cited by plaintiff, with the possible exception of *Grommes* v. *Sullivan*, 26 C. C. A. 320, 81 Fed. 45.   We believe the doctrine announced in that case to be contrary to the great weight of authority, and that it should not be followed.   · ·

In *Gladden & Joy Varnish Co.* v. *Interstate National Bank*, 16 C. C. A. 534, 69 Fed. 912, upon which plaintiff so much relies, the facts were that the defendant was a trading and manufacturing corporation of Ohio, having a branch in Missouri, at which a large business was carried on, in the purchase and working up of raw material, and the sale of the finished product over a large territory.   This branch was conducted by a general agent and manager, who was in full control of all departments of the business conducted in Missouri, and managed all its affairs, financial and otherwise, with the knowledge and consent of the corporation, and usually without direction and oversight by its officers.   From time to time he reported to his principal, and some of his reports showed entries of bills payable.   This general manager made notes in the name of the corporation, by himself, as treasurer ; and, upon the trial of an action upon them, it was proved that the president knew that the manager had been signing all the bills payable made by the Missouri branch, for goods purchased. The president of the corporation testified that it was the natural order of things for the manager to procure their discount by indorsing them as treasurer, and that, if the money was required in an emergency, he supposed the agent would be expected to make notes for the corporation, and cause them to be discounted.   Under these circumstances the court held

the jury warranted in finding the agent clothed with implied authority to execute the notes. In the course of the opinion, the court made some observations not necessary to a decision, to the effect that the general manager of a manufacturing and trading corporation, who is authorized to buy and sell goods, to carry on the business, and to take and discount promissory notes for his principal, is thereby vested with implied power to execute notes for his principal, and that such general agent is presumed to have the same authority to execute notes in behalf of the corporation that a reasonably prudent merchant or manufacturer has to make notes for himself. These observations were *obiter dicta*.

In all the other cases cited by plaintiff there was express or implied authority in the agent, a ratification of his acts, usage rising to the dignity of a custom, or estoppel. For example, in *Bates* v. *Keith Iron Co.*, 7 Metc. (Mass.) 224, the managing agent of a manufacturing corporation executed a note in its name for the amount of wages admittedly due from his principal. The court was inclined to the opinion that the directors had held the agent out as authorized to make notes, and might well have put the decision reached upon that fact. Whatever may be the principle applicable in this respect to trading or manufacturing corporations, there is nothing in the nature of the business of a corporation organized for the purpose of operating a telegraph line, or of the duties of its general manager, which implies authority in such agent to make negotiable paper. (*Craft* v. *Railroad Co.*, 150 Mass. 207, 22 N. E. 920.)

There was no express authority conferred upon Ridgway to make the notes in behalf of the defendant. If the admissibility of the document alleged to have been issued by Clark and the Standard Company be conceded, we find that it merely conferred upon Ridgway "full power to manage the business of the Rocky Mountain Telegraph Company, and make all necessary contracts and arrangements in carrying on and operating said business." This, under the authority of the adjudicated cases, and upon principle, was insufficient. Nor

was such power necessarily implied from the exigencies or general course of the business. (*New York Iron Mine* v. *First National Bank, supra.*) Neither was there a ratification by defendant of the acts of Ridgway, nor a recognition of the note as its paper. Neither was there proof of custom, habit or course of business pursued by defendant or by Ridgway, from which his authority to make negotiable notes could be implied or inferred. On three occasions, it is true, he did execute notes in the defendant's name, but there is no proof that these instances were ever brought to its knowledge until after Ridgway ceased to be its manager. (*Elwell* v. *Puget Sound Railroad Co.* (Wash.) 35 Pac. 376.) Nor was there sufficient publicity in the doing of the acts mentioned to warrant the inference that defendant had knowledge of them. The drawing of checks by Ridgway against the funds of the defendant did not tend to establish a usage as to the giving of negotiable promissory notes. (*Oak Grove Cattle Co.* v. *Foster, supra.*)

The defendant was not negligent in failing to obtain information in respect of the notes. In order to charge the defendant upon the principle of negligence, there must have been a duty devolving upon defendant, and a neglect to perform that duty. The duty of suspecting its agent of exceeding its authority was not incumbent upon it. It was justified in trusting to the presumption that he would act within the sphere or obit of the power delegated to him. Moreover, the payee of the note was bound to know that the law would not charge the defendant upon a note executed by an agent not clothed with the power to act in that behalf.

Plaintiff acquired the note by assignment, not by indorsement, and therefore acquired no better title than had the payee. Indeed, as between the parties, the effect of the note, if binding on defendant, was an account stated in writing, containing an express promise to pay the amount found to be owing, and the further promise to pay interest thereon at the rate of 1 per cent. per month and reasonable attorney's fees. But the question is not as to the effect of the note under the

circumstances of the particular case, but of the power in the agent to execute an instrument negotiable in form, — "a courier without luggage," — which in the hands of an indorsee in due course would not be open to defenses. We do not wish to be understood as denying the right of plaintiff to maintain an action for recovery of the debt (if any there was) for which Ridgway attempted to make the note. No such question arises, since the only subject of the action is the supposed note, and the only cause of action is the failure of the defendant to perform the alleged contract contained in the note.

For the foregoing reasons, the order appealed from in action No. 878 is reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*

2. Action No. 877, presents the question whether Ridgway, the general manager, was, under the facts disclosed by the evidence, authorized to pledge the credit of his principal for the overdraft of $350. We are clearly of the opinion, under the facts admitted and thus proved without objection on the part of the defendant, that the apparent power was, by implication, delegated to him. He was the general manager of the defendant, in full charge of its ordinary business and transactions. The defendant is charged with notice that the receipts of the business were much less than the outlay each month, the deficit during one month being in excess of $1,000. It knew, or ought to have known, that its general manager would, in the ordinary and prudent conduct of the business intrusted to him, borrow from time to time such moneys as were requisite to meet these expenses. It knew that it did not advance funds in anticipation of a deficit. It must have known, and was negligent if it did not know, that a bank account in its name was proper and necessary to be kept at Helena by the manager. It ought to have known that the agent would probably provide for paying that portion of the current expenses the liquidation of which could not be delayed, by obtaining a temporary loan from the defendant's banker.

The corporation had power to borrow money so far as necessary to effectuate its legitimate purposes. The trustees were its business agents, and in them resided its entire power touching the transactions of its business, and they possessed this power, the delegation of which by them to the general manager the law sanctioned. That power, so far as it was to be exercised by reason of temporary necessity from day to day or month to month, was, by plain and unmistakable implication, delegated by the trustees to Ridgway. No fraud or collusion is charged to have existed between the bank making the loan and Ridgway; nor was the amount of the loan so disproportionate to the business transactions carried on by Ridgway as to suggest to the lender that Ridgway might be obtaining the money for his own use; nor was it necessary for the plaintiff to show an actual appropriation to defendant's use. (Thomp. Corp. § § 5706, 5707.) Neither is it to be presumed that the agent acted in bad faith. On the contrary, as between defendant and plaintiff, the presumption of right acting upon the part of the agent is indulged. While persons dealing with agents of corporations are required to take notice of the extent of the powers conferred, to require them to have knowledge of the propriety of its exercise in the particular case would often result in gross injustice. "Especially is this so where the agent or officer of the corporation which exercises the power at the time represents the corporation, and speaks for it in giving information as to the circumstances under which it is executed." (*Id.* § 4889.)

We have examined all the cases cited by defendant, as well as many others, and find none of them conflicting with the principles declared in this opinion to be applicable to the facts here shown to exist.

The allegations of the complaint were established by admissions of the defendant, and by credible evidence, and were undisputed by countervailing proof. Where, in a civil action, the facts are admitted or undisputed, or where the evidence is "all in one direction," the only questions for decisions are those of law. There being no conflict in the evidence, and the

proofs being such that reasonable men could come to but one conclusion upon them, the case presents, in effect, an agreed statement of facts. (*Emerson* v. *Eldorado Ditch Co.*, 18 Montana, 247, 44 Pac. 969; 2 Thomp. Trials, §§ 2245, 2262; *Wabash Railway Co.* v. *Williamson* (Ind. Sup.) 3 N. E. 814; *Town of Orleans* v. *Platt*, 99 U. S. 676; *Town of Grand Chute* v. *Winegar*, 15 Wall. 355; *Cahill* v. *Railway Co.*, 20 C. C. A. 184, 74 Fed. 288; *Martin* v. *Ward*, 69 Cal. 132, 10 Pac. 276; *Bank* v. *Galland* (Wash.) 45 Pac. 35.

The order denying a new trial of action No. 877 is affirmed.

*Affirmed.*

PEMBERTON, C. J., and HUNT, J., concur.