**Peoria Life Insurance Company, Appellee, v. International Life and Annuity Company, formerly International Life and Trust Company, Appellant.**

### Gen. No. 7,739.

1. CORPORATIONS—*what acts ultra vires.* Acts ultra vires are those not within the powers conferred upon the corporation by the act of its creation, and even though not unlawful or beyond a corporation's powers violate the trust reposed in the managing board by the shareholders to manage affairs and funds for the object for which the corporation was created.

2. CORPORATIONS—*when ultra vires not defense.* The defense of ultra vires will not avail a corporation against enforcement of a contract of which it has had the benefit of good faith performance by the other party.

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

3. CORPORATIONS—*when bound by irregular contract.* A corporation is bound by a contract, even though made in an irregular way by those acting for the corporation, if it is within the corporate powers and the other party has no reason to suspect the irregularity.

4. CORPORATIONS—*validity of irregular acts.* Providing an act is not ultra vires for want of power in the corporation, it may be valid as to third persons although ultra vires for want of power in the corporate agent or officer, or from disregard of legal formalities, or from improper use of enumerated powers.

5. CORPORATIONS—*estoppel to deny irregular acts.* A corporation acting within its general powers and those contracting with it may be estopped to deny compliance with legal prerequisites to its existence or its action.

6. CORPORATIONS—*misapplication of proceeds as defense to good faith loan.* That a corporation uses a loan in a way not authorized by its directors, though not illegally or immorally, is no defense to a suit by the lender who knew of the unauthorized use but did not participate therein.

7. CORPORATIONS—*presumption of authority for president's act.* A president's act as business head of a corporation within the scope of his powers as such and for its benefit will be presumed, without contrary proof, to have been done by its authority.

8. CORPORATIONS—*note repurchase agreement as binding.* A corporation cannot question an agreement made by its president to repurchase notes sold by him and for which it received the money if the transaction appears to have been in the corporate interest.

9. CORPORATIONS—*implied power to make note repurchase agreement.* A corporation in making a sale of notes to obtain money for corporate purposes has an implied and incidental power to make the sale conditional upon an agreement for repurchasing the notes.

10. CORPORATIONS—*conversion of proceeds of loan as affecting corporate liability.* A check by way of a loan, made payable to a corporation and indorsed by it and its officer, is received by the corporation even though the officer converts the proceeds to his own use.

11. CORPORATIONS—*estoppel by course of conduct to deny president's authority.* A corporation is estopped to deny its president's authority to borrow by note assignments, after recognizing similar transactions and repaying the loans.

12. CORPORATIONS—*when inquiry as to president's authority unnecessary.* A corporation's holding out its president as authorized to borrow for it, on former occasions, makes further inquiry as to his authority unnecessary by the lender in making another good faith loan.

13. CORPORATIONS—*when loan agreement not ambiguous.* No ambiguity exists in a contract made up of a clear and definite offer by letter of a corporation president to repurchase notes if another would buy and the latter's clear acceptance by letter of the proposition to make the loan.

Appeal by defendant from the Circuit Court of Rock Island county; the Hon. C. J. SEARLE, Judge, presiding. Heard in this court at the October term, 1926. Affirmed. Opinion filed September 24, 1927. Rehearing denied November 8, 1927.

STEBBINS, GAREY, L'AMOREAUX & HURTUBISE, for appellant.

CONNELLY, WELD, WALKER, SEARLE & CRAMPTON and J. B. WOLFENBARGER, for appellee; H. A. WELD, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

Peoria Life Insurance Company, appellee, instituted this suit against International Life and Annuity Company, formerly International Life and Trust Company, a corporation, appellant, to recover the sum of $10,000 and interest thereon, for money advanced and which appellant promised to repay.

A trial was had without the intervention of a jury and a finding in favor of appellee and against the appellant for $11,175 and costs of suit and this appeal followed.

For the purposes of this opinion appellee will be called "plaintiff" and appellant, "defendant."

The declaration consists of three counts together with an affidavit of claim. The first count alleges in substance that the defendant requested plaintiff to furnish it $10,000 to enable it to buy a certain promissory note and mortgage secured by real estate in Shedburne County, Minnesota, and agreed with the plaintiff that if plaintiff would furnish said funds, it, the defendant, would assign the note and mortgage and repay the plaintiff the sum so advanced on March 1, 1925; that the plaintiff, relying upon the promise, loaned said money and the defendant did deliver the note and mortgage as security for said loan and that

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

defendant did not repay said money. The second count charges that the defendant made a certain contract with the plaintiff whereby it agreed that if plaintiff would buy until March 1, 1925, a promissory note in the sum of $10,000 and the mortgage securing the same, the defendant would repurchase said promissory note and interest on it March 1, 1925; that plaintiff, relying upon this promise, did buy from and carry for the defendant said note and mortgage which the defendant indorsed and delivered to the plaintiff; that the defendant failed to take up and repurchase said note. The third count contains the common counts to which is attached an affidavit setting up, among other things, that said claim of plaintiff was for money advanced by plaintiff to defendant to enable it to make a loan and to purchase the property representing a loan of $10,000 known as the Albrecht loan, secured by mortgage on real estate in Shedburne county, Minnesota; that the defendant contracted and agreed to pay to the plaintiff on March 1, 1925, the said sum of $10,000 with interest at the rate of six per cent.

To the declaration the defendant pleaded the general issue and filed notice of special defenses under said plea. The special defenses relied upon were that the defendant never authorized any officer to carry on negotiations with reference to the matters alleged in plaintiff's declaration; that if any officer or agent of the defendant purported to carry on said negotiations, said acts and doings were not and are not the acts of the defendant; that the defendant never had any knowledge of the matters alleged in plaintiff's declaration; that it never affirmed, ratified, nor approved any of the alleged acts; that it never received any benefit from said acts, pecuniary or otherwise; that it never authorized either expressly or impliedly any of its officers or agents to represent the defendant in connection with the matter complained of; that defendant

never had any knowledge, either actual or constructive, of the transactions.

The affidavit of merits filed by the defendant contains substantially the same matters as set forth in its notice of special defenses relied upon.

The record discloses that on June 24, 1924, J. O. Laugman, president of the defendant insurance company, wrote Emmet C. May, president of plaintiff company, a letter which is in words and figures as follows:

"June 24, 1924

Mr. Emmet C. May, President
Peoria Life Insurance Company
Peoria, Ill.
Dear Mr. May:

"You always have been much like a big brother to me and I rather regret that I persistently call on you for favors and I am not permitted to do anything real in return.

"Sometime ago, I made the promise to a man that we would handle a mortgage loan for him amounting to $10,000. I have been all over the property and know it well and am satisfied with it—but owing to heavy death losses and failure to collect quite a bit of mortgage loan interest, we are quite reduced in cash.

"I wonder if you can carry this for us until March 1, 1925. I shall greatly appreciate it if you can, it being understood that we take the loan up at that time.

"It is a full fifty per cent loan. I insisted that the appraisal be kept down to $100.00 an acre as I wanted to be conservative although the land across the road sold for $125.00. However, I kept it down so no one could say I had allowed any inflation in value.

"There is a commission of $300.00 and I am willing to give up every cent of this to get the loan taken care of and make my word good.

"I am enclosing a description of the property and if you can handle it, I will have the papers all completed and sent you in accordance with the terms of this letter.

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

"Assuring you of my appreciation of what you have done in the past and what you possibly can do for me at the present time, I am

Sincerely yours,

JOL:N                                       J. O. Laugman."

The record also shows that on July 3, 1924, Emmet C. May, president of the plaintiff company, wrote Laugman in reply to his favor of June 24, 1924, which is as follows:

"July 3, 1924

Mr. J. O. Laugman,
President, International Life & Trust Company,
Moline, Ill.

My dear Mr. Laugman:—

"I have been delayed in answering your letter because I have been out of the city part of the time. Referring to the same will say that while we do not loan in Minnesota, and while I believe from the appearance of the application this is not a loan that we would make, yet we want to grant you every favor that we can and will carry your loan if you desire to make it yourself and endorse the note over to us. If you care to you may make the endorsement in pencil so you can erase it when it comes back. You had better make assignment to us which we will, of course, not record, but in case of an examination from the Department, we would have the papers all intact.

"I assume that the loan draws 6%. We do not want any of your commission. When the papers are ready you may send them along and we will give it proper consideration.

Yours very truly,
Emmet May

ECM:T                                       President."

Other correspondence discloses that the note and mortgage were delivered to the plaintiff company and the check for $10,000 was mailed to J. O. Laugman, President, International Life and Trust Company.

The evidence shows that a demand was made by the plaintiff on the defendant to take up said note and mortgage, as is alleged in the said first count of the declaration, or to repurchase the same, as set forth in the second count of the declaration, and on its failure to do so, plaintiff instituted this suit with the result as aforesaid.

A number of reasons are assigned by the defendant for a reversal of the judgment. It is the contention of the defendant that Cahill's St. 1925, ch. 73, ¶¶ 368 and 370, are a part of the charter of the defendant corporation. By the provisions of the statute all moneys and investments must have the approval of the board of directors or some committee thereof charged with the duty of supervising investments and loans. It is argued that the acts of J. O. Laugman, president of the defendant company, with reference to the loan in question were *ultra vires* and beyond and in excess of the charter powers of the corporation; that J. O. Laugman, its president, had no authority to enter into the agreement set forth in the declaration. In other words it is contended by the defendant that because of the fact that it did not, by its loan committee or board of directors, first pass upon and approve the loan in question, that the action of Laugman, its president, in procuring the assignment of said loan by Schwab to the defendant and its reassignment to the plaintiff with an agreement to take up or repurchase the same on March 1, 1925, with interest, is *ultra vires* and for that reason no recovery can be had against the defendant.

Where acts of a corporation are spoken of as *ultra vires,* it is not intended that they are unlawful, or even such as a corporation cannot perform, but merely that they are not within the powers conferred upon the corporation by the act of its creation, and are in violation of the trust reposed in the managing board by the shareholders, that the affairs shall be managed and the

funds applied solely by carrying out the object for which the corporation was created. *Kadish v. Garden City Equitable Loan & Building Ass'n,* 151 Ill. 531–537.

It is well settled that a corporation cannot avail it-self of the defense of *ultra vires* when the contract has been in good faith fully performed by the other party and the corporation has had the full benefit of the performance of the contract. *Kadish v. Garden City Equitable Loan & Building Ass'n, supra.*

Where a party deals with a corporation in good faith—the transaction is not *ultra vires*—and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists. If the contract can be valid under any circumstances, an innocent party in such a case has a right to presume their existence and the corporation is estopped to deny them. *Merchants' Nat. Bank of Boston v. State Nat. Bank of Boston,* 10 Wall. (U. S.) 604; *Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co.,* 174 U. S. 552–572, 573.

The distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by law on the one side and an irregularity in the exercise of the granted powers on the other is well established and has been constantly recognized by this court. *Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., supra,* 552–570.

Where an act is not *ultra vires* for want of power in the corporation, but for want of power in the agent or officer, or because of the disregard of formalities which the law requires to be observed, or is an improper use of one of the enumerated powers, it may be valid as to third persons. *National Home Building & Loan Ass'n v. Home Sav. Bank,* 181 Ill. 35–44.

When a corporation is acting within the general scope of the powers conferred upon it by the legislature, the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action because such prerequisites might in fact have been complied with. *National Home Building & Loan Ass'n v. Home Sav. Bank,* 181 Ill. 35–45; *Central Transportation Co. v. Pullman's Palace Car Co.,* 139 U. S. 24.

While it may be true as contended by the defendant that the statute requires the approval of the board of directors or a loan committee appointed by the board of directors and that the officers of the company acted irregularly in making the loan, it does not follow that it was *ultra vires* for the defendant company to make the loan in question. In other words we have merely the irregular exercise of the unquestioned power of the defendant company.

We might inquire in passing, What difference does it make in this cause whether the loan to Albrecht by the defendant company was *ultra vires* or not? This suit is not brought upon the Albrecht loan. The plaintiff company did not participate in making the loan by the defendant company to Albrecht. It assumed no responsibility for it. It was not consulted about it.

In *Bradley v. Ballard,* 55 Ill. 413, a bill in chancery was filed for the purpose of enjoining the prosecution of a suit pending in the circuit court of Cook county against a corporation called "The North Star Gold and Silver Mining Company," in which complainant was a stockholder, upon certain promissory notes given by said company, and also to cancel certain other notes not yet in suit. It appeared that a corporation was organized in the city of Chicago in 1856 for the purpose of carrying on the business of mining in the city of Chicago. The company borrowed large sums of money and spent them in mining in Colorado which

was *ultra vires* the corporation.   It was not claimed that the notes were not given for a full and fair consideration, but their cancellation was sought upon the ground that they were given for money borrowed to enable the company to prosecute a business which it had no power to prosecute, and that this purpose was known to the lenders of the company.   The court in its decision on page 417 said:

"It is said by counsel for complainant, that a corporation is not estopped to say, in its defense, that it had not the power to make a contract sought to be enforced against it, for the reason, that if thus estopped, its powers might be indefinitely enlarged.   While the contract remains unexecuted on both sides, this is undoubtedly true, but when, under cover of this principle, a corporation seeks to evade the payment of borrowed money, on the ground that, although it had power to borrow money, it expended the money borrowed in prosecuting a business which it was not authorized to prosecute, it is pressing the doctrine of *ultra vires* to an extent that can never be tolerated, even though the lender of the money knew that the corporation was transacting a business beyond its chartered powers, and that his money would be used in such business, provided the business itself was free from any intrinsic immorality or illegality."

To the same effect is *Darst v. Gale,* 83 Ill. 136, which quotes extensively from *Bradley v. Ballard, supra,* and fully supports the doctrine that where money is loaned in good faith the fact that the borrower uses the money in an illegal manner or for an unauthorized purpose, even though the lender knew it was going to be so used is no defense so long as such use was not participated in by the lender, or was not intrinsically immoral or illegal.   There was nothing immoral or illegal in and of itself in making the Albrecht loan by the defendant company and it is equally certain that the plaintiff company took no part in making it.   This is made clear

48 · APPELLATE COURTS OF ILLINOIS.

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

by Mr. May's first letter, already set out in this opinion, in which he says his company did not loan in Minnesota, and from the looks of the application the proposed loan was not one his company would make. "Yet," he said, "we want to grant you every favor that we can and will carry your loan if you want to make it yourself and endorse the note over to us."

If it was within the corporate powers of the defendant company when regularly acting by its board of directors or loan committee to approve the Albrecht loan, then the act of Laugman, its president, in conjunction with Johnson, its secretary, in making the regular assignment of the mortgage to the plaintiff company and the act of Laugman in indorsing and transferring the $10,000 note made by Albrecht and the agreement to repurchase the said loan was not *ultra vires* because it was within the corporate powers of the defendant company when regularly acting through its loan committee or board of directors. Furthermore, corporations act only through their agents. The president of a corporation is by virtue of his office recognized as the business head of the company and any contract executed by the president on behalf of the corporation pertaining to corporate affairs within the general powers of the corporation, will, in the absence of proof to the contrary, be presumed to have been done by authority of the corporation and will be binding upon the company. *Quigley v. W. N. Macqueen & Co.,* 321 Ill. 124.

A corporation can act only through its agents and the president of a corporation, as the agent and corporate representative, has the power, in the ordinary course of business and in furtherance of the corporate interests, to execute contracts and to bind the company in so doing. He is, by virtue of his office, recognized as the business head of the company, and any contract pertaining to the corporate affairs within the general powers of such officer, executed by the president on behalf of his corporation, will, in the absence of proof

to the contrary, be presumed to have been done by authority of the corporation. *George E. Lloyd & Co. v. Matthews*, 223 Ill. 477; *Atwater v. American Exchange Nat. Bank of Chicago*, 152 Ill. 605; *Bank of Minneapolis v. Griffin*, 168 Ill. 314; *Anderson v. South Chicago Brewing Co.*, 173 Ill. 213; *Anderson Transfer Co. v. Fuller*, 174 Ill. 221–225; *Williams v. Harris*, 198 Ill. 501–504. It necessarily follows, therefore, that if the contract had to do with the corporate affairs of the defendant corporation and was within its general powers, such contract, being executed, by its president, on its behalf, would be presumed to be done by authority of the corporation. It is for the defendant company to show that such act was without authority. It is insisted by the defendant that even though it be conceded that J. O. Laugman, as president of the defendant company, could bind it in the sale of the note and mortgage in question, he would have no authority to bind it in an agreement to repurchase said note and mortgage. Where a corporation through its president sold notes and received the money paid therefor, it is in no position to question the authority of its president to sell the notes or the validity of his agreement to repurchase them, where the transaction appears to have been in furtherance of its corporate interests. *Flodin v. W. H. Lutes Co.*, 191 Ill. App. 195.

Where a sale of notes is made by a corporation to obtain money for corporate purposes, there is an implied and incidental power to make the sale conditional upon an agreement for repurchasing the notes. *Flodin v. W. H. Lutes Co., supra.*

The second count of the declaration is framed upon the theory that the transaction in question was a sale with a contract to repurchase. A contract to repurchase would bind the company as well as a contract to repay the company. *Flodin v. W. H. Lutes Co., supra; Quigley v. W. N. Macqueen & Co., supra.*

50 APPELLATE COURTS OF ILLINOIS.

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

Moreover, the record discloses that the check of the plaintiff in the sum of $10,000 which was issued at the time of this transaction was not payable to Laugman, président of the defendant company, but was made payable to the defendant. The defendant, therefore, if the transaction was one which was within its corporate powers, would be held in law to have received the proceeds of the transaction, even though its president, in breach of his duties as such, converted the proceeds to his own use. Although the defendant contends that it did not know of this particular transaction and did not receive the money, it will be remembered that the only way that a corporation can act is through its agents and officers and the knowledge of Laugman was the knowledge of the defendant company and when Laugman received the check for $10,000, the defendant received it. The check being made payable to the defendant company and indorsed by it and its own officer, elected and empowered to act in that capacity, the defendant is now in no position to say that it did not receive the money from the plaintiff. *Welsh v. Bruce Sewing Machine Co.*, 223 Ill. App. 467–469; also *Kadish v. Garden City Equitable Loan & Building Ass'n, supra.*

The evidence shows that on two prior occasions transactions of a similar character as the one in controversy did take place between the plaintiff and the defendant, known as the Kunkle and Sollo loans. We are not unmindful of the fact that the defendant insists that these two loans should not be considered here for the reason that the record of the defendant corporation discloses that the committee appointed to pass on loans made by the defendant passed on these two particular loans. At the time the Kunkle and Sollo loans were made Laugman was president of the defendant company. The Kunkle and Sollo loans were handled in the same way as the Albrecht loan. The defendant held Laugman out to the plaintiff as pos-

Peoria Life Ins. Co. v. International Life & Annuity Co., 246 Ill. App. 38.

sessing the power and authority to act in the way that he did act which estops the defendant in this proceeding from claiming that he did not have and possess the same authority in reference to the Albrecht loan that the defendant had held him out and recognized him as possessing in the Kunkle and Sollo loans. The Kunkle and Sollo loans were handled by the plaintiff company for the defendant company as accommodations the same as the Albrecht loan with an agreement to repurchase or to take up, which was complied with in the Kunkle and Sollo loans. As far as the Peoria Life Insurance Company was concerned no more authority for Laugman to act for defendant in handling the Kunkle loan or handling the Sollo loan was communicated to it than was his authority to act in handling the Albrecht loan.

We are of the opinion that since the record discloses that the loan in controversy was obtained in the same manner as were the Kunkle and the Sollo loans and no information was communicated to the plaintiff by the defendant of any different state of facts existing in the subsequent loan than existed in the former that the said defendant is now estopped from claiming that Laugman, its president, did not have and possess the same authority in reference to the Albrecht loan which the defendant held him out and recognized him as possessing in the other two instances.

A number of other questions are urged by the defendant in support of its contention for a reversal of the judgment. Among them is that the plaintiff was guilty of negligence as a matter of law in its dealings with the then president of the defendant company, J. O. Laugman, and in remitting when it did its funds to Laugman, president of the defendant company. Counsel for defendant has evidently overlooked the fact that the plaintiff did not remit any funds to Laugman. The check for the Albrecht loan was made payable to the defendant as in the Kunkle and Sollo loans and said checks in each of the three instances were in-

dorsed in the same identical way by the defendant company by its president. The plaintiff in each instance dealt with the defendant through its recognized highest officer.

The defendant seeks to invoke the rule that a person dealing with an agent is bound at his peril to ascertain not only the effect of the agency but the extent of the agent's authority. That rule cannot be invoked in this cause. Not only did Laugman as president of the defendant company have apparent authority to act but was held out and recognized by the defendant as having full and complete authority in two prior like transactions between the parties to this litigation and which led the plaintiff in good faith to believe that he possessed the authority defendant had recognized him as possessing in the other two instances and therefore plaintiff was not required to make any further inquiry as to Laugman's authority but had a right to rely on what defendant had in the other two instances represented and recognized him as possessing and the question of the plaintiff acting at its peril is not in this case as far as plaintiff is concerned.

Other questions have been suggested and argued. We have examined them and believe there is no merit in them.

The contract between the parties is not ambiguous. While in some respects it is informal it is clear and definite and is embodied in the correspondence of Laugman to May and May to Laugman. These letters embody the contract between the parties and show that this was a temporary loan to be repaid on March 1, 1925, and was not an outright purchase as contended for by the defendant.

Numerous findings were submitted to the court and were passed upon on the hearing of said cause. In view of the conclusion we have reached we do not deem it necessary to discuss the numerous propositions and findings submitted.

We think that justice has prevailed in this cause. We believe that the law arising out of the facts as disclosed in this proceeding is with the plaintiff. We are of the opinion, therefore, that the judgment of the circuit court of Rock Island county should be affirmed, which is accordingly done.

*Judgment affirmed.*