Betty **ADELMAN**, Appellant,

v.

**CENTERRE BANK OF KANSAS CITY,** N.A., et al., Respondents.

**No. WD 35921.**

Missouri Court of Appeals, Western District.

June 25, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 27, 1985.

Thomas J. O'Brien, Raytown, for appellant.

Timothy K. McNamara, Lathrop, Koontz, Righter, Clagett & Norquist, Kansas City, for respondents.

Before LOWENSTEIN, P.J., and SHANGLER and SOMERVILLE, JJ.

LOWENSTEIN, Presiding Judge.

Plaintiff/appellant Betty Adelman and her husband, Robert Adelman, were officers, directors and principal shareholders of a closely held corporation, Beaumont Enterprises, Ltd., which operated a cocktail lounge in Blue Springs, Missouri. In June of 1979 the Adelmans were contemplating building new premises which they would lease to Beaumont. Robert sought a personal loan from respondent, Centerre Bank (formerly Columbia-Union National Bank) and was turned down. At that time Robert had an outstanding unsecured personal loan with Centerre for about $8,500. Beaumont had an outstanding corporate loan secured by SBA for about $20,000, also with Centerre.

Centerre informed Robert the only loan it would make would be a corporate loan and would charge one percent over the current prime interest rate. On June 12, 1979 a credit memorandum for a $30,000 loan was made in Beaumont's name, listing Robert as principal, both Robert and Betty as guarantors, and the purpose of the loan as "working capital and expansion."

On June 14, 1979 four documents were executed with Centerre: 1) a $30,000 note due in one year, signed by Robert for the Beaumont Corporation; 2) a "Guaranty" for the Beaumont loan signed by Robert and Betty; 3) a "Security for Guaranty Agreement" signed by Robert and Betty listing the Adelman's home as the security; 4) a deed of trust on the Adelman home signed by Robert and Betty. The proceeds of the loan went to pay off Robert's personal loan, the balance going into Robert's personal account. On June 14, 1980 a six month extension agreement was executed, it was signed by Robert as "President." When the loan went into default, Centerre sent the Adelman's notice of foreclosure on the deed of trust.

On June 4, 1982 Robert sent Centerre a letter requesting that, pursuant to § 433.-010 RSMo which covers suretyship, Centerre Bank commence a suit against Beaumont to collect the money. However, Centerre did not file a suit since it believed the Adelman's were *guarantors* not sureties. On December 23, 1982 Betty filed the present action against Centerre seeking to declare the deed of trust invalid. By the time of trial on February 23, 1984 Centerre had already foreclosed on Adelmans' home and is presently the owner. The trial court found the loan was made to the Beaumont Corporation with Robert as its principal, pursuant to a resolution authorizing the loan. It found Robert and Betty were guarantors. It further found the $8657.77 sum of the loan proceeds was used to pay off Robert's personal loans at the bank, the proceeds of which prior loans were used for business purposes. The balance was determined to have gone into Robert's special account where a significant portion was used for the lounge in Blue Springs.

The standard of review is under Rule 73.01 and *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

It is somewhat unclear the relief Betty seeks, her petition is denominated as one to "declare a deed of trust invalid and that she be discharged from liability." It would seem Betty should have sought injunctive relief to prevent the foreclosure. The parties do not raise this issue so the court will address the merits of the points on appeal.

Betty first contends that Beaumont's Board of Directors never authorized this loan because it was in fact a personal loan to Robert as evidenced by Robert diverting the money to his personal account. Betty argues the only reason the loan was made in Beaumont's name was so Centerre could charge a much higher interest rate. Betty relies on *Molasky Enterprises, Inc. v. Carps, Inc.,* 615 S.W.2d 83 (Mo.App.1981), for the proposition that a president of a corporation must be given special authority to "sign accommodation paper or as security for a third person." *Id.* at 87. However, *Molasky* is inapplicable since there the court was dealing with corporate officers who executed papers on behalf of the corporation to obtain a personal loan for themselves. The bank in fact issued a *personal* loan without ever receiving a corporate resolution authorizing this act.

Here all the documents clearly indicate the loan was for Beaumont, and Centerre had a "Certified Copy of Resolution Board of Directors" from February 3, 1979 that Robert or Betty was authorized to borrow money from Centerre for Beaumont. "If there is authority to borrow, there is no duty on the part of the lender to see that the money is applied to corporate purposes and not diverted by the officer or agent obtaining the loan." 2 Fletcher Corporations § 473 (1982 ed.). *See also* 19 C.J.S. Corporations § 1059 (1940).

There are no Missouri cases on point, but several other states have followed this rule. In *Petition of Mulco Products,* 50 Del. 28, 123 A.2d 95, 106 (1956), *affirmed,* 50 Del. 246, 127 A.2d 851 (1956), an individual loaned money to a corporation but made the check payable to reduce his personal indebtedness. The court held that if the officer "misappropriated the same, the corporation will not be heard to deny that it received the benefit of the loan. [The officer] having the authority to borrow and in fact borrowing for the corporation, [the lender] was under no duty to see that the money was applied to corporate purposes and not misappropriated by [the officer]." *See also Oklahoma Asphalt, Paint and Roofing Co. v. Phillips,* 14 Ga.App. 356, 80 S.E. 863 (1914); *Martin & Co. v. Logan,* 30 Ky.Law Rep. 799, 99 S.W. 648 (1907); *Helena National Bank v. Rocky Mountain Telephone Company,* 20 Mont. 379, 51 P. 829 (1898); *Buffalo Loan, T. & S.D. Co. v. Medina Gas & E.L. Co.,* 12 A.D. 199, 42 N.Y.S. 781 (App.Div.1896).

The North Carolina Supreme Court further added to this rule by holding that a lender is not put upon inquiry as to whether the loan is for the corporation or for the officer, from the fact that the individual note of the officer is offered as additional security. *Watson v. Proximity Mfg. Co.,* 147 N.C. 469, 61 S.E. 273, 276 (1908). An Illinois appellate court has held "where money is loaned in good faith, the fact that the borrower uses the money in an illegal manner or for an unauthorized purpose, even though the lender *knew* it was going to be so used is no defense so long as such use was not participated in by the lender, or was intrinsically immoral or illegal." *Peoria Life Ins. Co. v. International Life & Annuity Co.,* 246 Ill.App. 38, 47 (1927).

■ In the present case the Adelmans were under no duress to take out this additional loan. There is nothing illegal about a bank making the financial decision to make only business, rather than personal loans. Robert Adelman chose to deal with Centerre, and chose to make the loan in Beaumont's name with his home as security. He and Betty cannot escape liability because he used the corporate money for personal affairs. This court will not allow Betty to, directly, and Robert as a non-party, indirectly, to escape the debt and reclaim their property simply because the good-faith lender didn't do something about Robert's activities.

■ Betty's argument that she is at most a surety and not a guarantor is a specious one. On the same day the note was signed, Betty signed a "guaranty", in which she and her husband "unconditionally" guaranteed payments by the debtor Beaumont, the stated purpose being "to induce [Centerre] to loan money or otherwise extend financial accommodation to or for the account of Beaumont Enterprises, Ltd." Under § 400.3–416 RSMo there is no doubt that Betty contracted that "if the instrument is not paid when due [the signer] will pay it according to its tenor without resort by the holder to any other party." Thus Centerre need not have complied with § 433.010 RSMo since that only applies to sureties.

■ The guaranty also stated that Centerre could "alter, accellerate, extend, renew or change the time, place, manner or terms of payment," without notice to or consent of Betty or Robert. Thus, Betty cannot complain that she was not notified that Robert signed a six month extension. Even if it is true as Betty alleges that Robert kept her "in the dark" about these transactions and exactly what she was signing on June 14, 1979, Betty's remedy is not attacking Centerre's foreclosure on the deed of trust which was security for the guaranty. The trial court was correct in

not allowing the wife to jeopardize the lender's security on the evidence in the case. Whether Betty has a viable cause of action against Robert is not before this court.

Betty's other contention that Beaumont's name was used merely as a subterfuge to enable Centerre to exact an interest note in excess of that permitted from an individual is also without merit, without explanation and without applicable citation of authority. Nowhere in Betty's petition is there a contention that Missouri's usury laws applied. Under the applicable standard of review there was substantial evidence to support the trial court's finding that a *corporate*, not personal loan was granted here, and the loan was guaranteed by husband and wife who used this home as security.

Centerre's motion for damages for frivolous appeal, Rule 84.19, the issue's presented on appeal by the appellant although ruled against her, are "fairly debatable". *Antioch Travel Center v. Phillips,* 676 S.W.2d 88, 90 (Mo.App.1984).

The judgment is affirmed.

All concur.