CHARLES E. GODFREY *et al.*, Trustee *vs.* SHUBAEL CADY
HUTCHINS *et al.*

DECEMBER 17, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1) *Wills. Charitable Uses.*

The legacy in question was grouped in the will with others, the provisions relating thereto being as follows: "After paying the foregoing provisions should my estate at my decease or at any time thereafter in the judgment of my said trustees be sufficient therefor then the said trustees to pay the following legacies." Among the legacies was the following: "To the treasurer of any one or more societies or organizations whose object is the improvement and education of the colored people of the south, I give the sum of ten thousand dollars for the uses and purposes of said societies but I leave it wholly to the judgment of my said trustees as to the time when, how much of, and to what society or societies or organizations said sum or any part thereof shall be paid having reference to the ability of my estate and the efficiency of any of said societies in the above object":—

*Held*, that gifts for the advancement of learning, science, and the useful arts, without any particular reference to the poor, are regarded as charities; and where, as in this case, the class is designated, and the fund is to be given to any one or more societies whose object is the improvement and education of said class, the selection of the beneficieries being left to the discretion of the trustees, it is not necessary that they be designated by name or specifically pointed out:—

*Held*, further, that the gift was a valid one for charitable uses, and not void for indefiniteness, or uncertainty.

(2) *Trusts. Discretion.*

*Held*, further, that, having exercised the discretion of determining the fact and time of the ability of the estate to pay, the trustees had not the discretion not to pay the legacy, but, when the existence of efficient societies was established, must exercise the discretion of selecting the beneficiaries.

(3) *Trusts. Discretion.*

*Held*, further, that, irrespective of the powers conferred upon succeeding trustees by Gen. Laws cap. 208, § 5, the testator had expressly directed the carrying out of the trusts by the "trustees or trustee for the time

being," the discretion, therefore, attached to the office, and was not personal to the trustees named in the will.

(4)  *Trusts.   Discretion.*

*Held*, further, that, under the will, the duty of passing upon the question of efficiency before exercising the discretion of selection was imposed upon the trustees, and the reference to a master to report as to the existence of such societies was not required.

BILL IN EQUITY, for instructions to trustees.

JOHNSON, J.  Bill in equity for instructions to the trustees regarding a certain legacy contained in the will of Shubael Hutchins, late of Providence, deceased.

The bill states that Shubael Hutchins, formerly of Providence, in the State of Rhode Island, died May 20th, 1867, leaving a will with three codicils thereto which have been duly admitted to probate and remain of record in the Municipal Court of said Providence.

That in and by said will all the rest, residue, and remainder of his estate, real and personal, was devised to Edward A. Greene, Zalmon A. Storrs, and Thomas Brown, in trust, for the uses and purposes and under the limitations in said will and codicils declared.  The bill then recites the changes which have occurred in the incumbency of the office of trustee, including the appointment of the present trustees, Charles E. Godfrey, Jr., and John H. Cady.

The bill further states that the legacies and annuities given in and by said will and codicils have all been settled with the exception of the following legacy:  "To the Treasurer of any one or more societies or organizations whose object is the improvement and education of the colored people of the South, I give the sum of ten thousand dollars for the uses and purposes of said Societies, but I leave it wholly to the judgment of my said trustees or trustee for the time being, as to the time when, how much of, and to what society or societies or organizations said sum of ten thousand dollars, or any part thereof shall be paid, having reference to the ability of my estate and the efficiency of any of said societies in the above object."

The complainants pray the advice and direction of the court in regard to said legacy: (1) As to whether it is a good charitable bequest, or not. (2) As to whether these trustees have any discretionary power not to pay said legacy or any part thereof. (3) If said legacy is a good charitable bequest, how are these trustees to select the beneficiaries?

The complainants further state that they do not know of the existence of any society or organization in this State whose object is the improvement and education of the colored people of the South; and, if said legacy is held 'to be a good charitable bequest, they ask that said cause be sent to a master to ascertain and report whether there are any such societies or organizations either in this State or elsewhere, and if there are any such societies or organizations, where they are located.

And the complainants further state that, with the exception of said legacy of ten thousand dollars to the treasurer of any one or more societies or organizations whose object is the improvement and education of the colored people of the South, as aforesaid, they have completed the trusts in said will contained and are desirous of settling their accounts with said trust estate and paying over the balance in their hands to the residuary legatees, to the end that they may be discharged from said trust.

A copy of the will is filed with the bill.

The legacy in question is grouped in the will with several others, the provisions relating thereto being as follows: "After paying and providing for all the foregoing provisions of this my Will, should my estate at my decease, or at any time thereafter, in the judgment of my said trustees or trustee for the time being, be sufficient therefor, then the said trustees or trustee for the time being to pay the following legacies to the following named legatees, to wit." Then follow bequests to four societies, and then the bequest set out in the bill and quoted above.

We think this language shows an intention on the part of the testator to give to such society or societies the sum of ten thousand dollars or so much thereof as his estate shall be able to pay, leaving to the discretion of the trustees, for the time

being, the determination of the fact and time of such ability to pay, and also the selection of the society or societies which shall be the beneficiaries, the exercise of the latter discretion necessarily involving the ascertainment of the existence and state of efficiency of said societies.

That gifts for the advancement of learning, science, and the useful arts, without any particular reference to the poor, are regarded as charities is well settled. Counsel for respondents, however, contend that the gift is void for indefiniteness and uncertainty.

In the bequest under consideration, the class is designated viz.: the colored people of the south, and the fund is to be given to any one or more societies or organizations whose object is the improvement and education of said class. The societies and organizations are to be selected by the trustees or trustee for the time being. And whenever a discretion is given by the founder of a charity to trustees to select the beneficiaries out of a class, it is not necessary that they be designated by name, or specifically pointed out. *Pell* v. *Mercer,* 14 R. I. 412; *Rhode Island Hospital Trust Co.* v. *Olney,* 14 R. I. 449; *Selleck* v. *Thompson,* 28 R. I. 350, and cases cited.

In our opinion, therefore, the gift is a perfectly valid one for charitable uses, and not void for indefiniteness or uncertainty.

(2)    The second question propounded by the trustees is, "whether these trustees have any discretionary power not to pay said legacy or any part thereof."

Gifts to charitable uses are highly favored, and, the bequest being to a charity, the fund must be applied thereto in accordance with the intention of the testator. This doctrine is admirably expressed by the court in *Hadley* v. *Hopkins Academy,* 14 Pick. 240, where Edward Hopkins, of England, in 1657, devised the residue of his estate in New England to trustees, "in full assurance of their trust and faithfulness in disposing of it, according to the true intent and purpose of me the said Edward Hopkins, which is, to give some encouragement in those foreign plantations, for the breeding up of hopeful youth, in a way of learning, both at the grammar school and college, for the public service of the country in future times." On

page 253, Shaw, C. J., says: "It is a rule in equity, that a gift of real or personal estate, either *inter vivos*, or by will, to promote education, is a charity. It is also considered as a settled rule, that such a gift to a charitable use is to receive a most liberal construction; and if the trustees pervert the fund to other uses, or even if they refuse to accept or execute the trusts, the charity itself shall not fail, nor will the property revert to the donor. But it will be competent for a court of chancery to direct, in the former case, that the trusts shall be executed, and in the latter, that new trustees shall be appointed, in whom the legal estate shall vest, to be holden in trust for the purposes of the charity." This is in full accord with the principles enunciated in *Pell* v. *Mercer, supra.*

The fund is given for a charitable purpose, and the carrying out of that purpose is a duty imposed upon the trustees. There remains to them only the discretion of determining the fact and time of the ability of the estate to pay the legacy, and the selection of the beneficiaries. Having determined that the estate is able to pay, the selection of the beneficiaries alone remains. The second question propounded by the bill must therefore be answered in the negative. The trustees have not the discretion not to pay said legacy or any part thereof, but, when the existence of efficient societies or organizations of the kind named in the will is established, must exercise the discretion, given them by the will, of selecting the beneficiary or beneficiaries from among them.

Counsel for respondents argue that the legacy must fail entirely because the personal trust reposed in the original trustees can not be exercised by succeeding trustees.

(3) Gen. Laws cap. 208, as amended by the court and practice act, provides for the appointment of new trustees, and section 5 thereof provides: "Every trustee appointed pursuant to the provisions of this chapter shall have the same powers, authorities, and discretions, and may in all respects act, as if he had been originally appointed a trustee by the instrument, if any, creating the trust;" and this provision applies to trusts heretofore or hereafter created if a contrary intention is not ex-

pressed in the instrument creating the trust.    Sections 7 and 8 of said chapter.

Irrespective of the statute, however, the testator has expressly directed the carrying out of the trust by the "trustees or trustee for the time being."    The discretion is, therefore, attached to the office, and not personal to the trustees named in the will.    *Bailey* v. *Burges*, 10 R. I. 422, 426.    See also *Blakely, Petitioner*, 19 R. I. 324; *Boutelle* v. *City Savings Bank*, 17 R. I. 781, 784, 785.

(4)    The third question is: "If said legacy is declared to be a good charitable bequest, how are these trustees to select the beneficiaries?"    The trustees ask that the cause be sent to a master to ascertain and report to the court whether there are any such societies or organizations either in this State or elsewhere, and if so, where they are located.    The duty of selecting the societies or organizations which shall receive the bequest is imposed by the will upon the trustees, and, as we have said, *supra*, this necessarily involves the ascertainment of their existence and state of efficiency.

The trustees would have to pass upon the question of efficiency before they could properly exercise the discretion of selection, and we do not think it will be difficult for them to ascertain whether or not there are such societies or organizations.    We do not think that a reference to a master is necessary.

*Herbert Almy*, for complainants.

*Vincent, Boss & Barnefield, and John Henshaw*, for respondents.