CONWAY, RESPONDENT, *v*. MONIDAH TRUST ET AL., APPELLANTS.

(No. 3,635.)

(Submitted March 24, 1916. Decided April 17, 1916.)

[157 Pac. 178.]

*Personal Injuries—Parent and Child—Contributory Negligence.*

Trial—Jury—Directing Verdict—Rule.
1.   No cause should be withdrawn from the jury, unless recovery cannot be had upon any view which may reasonably be drawn from the facts which the evidence tends to establish.

Same—Undisputed Facts—Directing Verdict.
2.   Where the facts in a personal injury action are undisputed and such that reasonable men can draw but one conclusion from them, the case presents in effect an agreed statement of facts, and only questions of law determinable by the court.

Personal Injuries—Parent and Child—Contributory Negligence of Parent.
3.   Where the parents of a seven year old child intrusted it to the custody of a person who took it to a place of known danger, *i. e.*, an unguarded mining shaft, gave it no warning and permitted it to play about the mouth of the shaft until it fell into it and was injured, a *prima facie* case of contributory negligence on the part of the custodian—and hence of the parents—was made out, forbidding recovery of damages by the father, in the absence of evidence acquitting him of the imputation of negligence.

[As to imputing parent's negligence to child, see note in 110 Am. St. Rep. 281.]

Same—Negligence—Custodian.
4.   Customary negligence in the matter of permitting children to play about open mining shafts in the vicinity of the place of the accident, could not exonerate plaintiff from the imputation of negligence.

Same—Forgetfulness of Duty—Effect.
5.   Forgetfulness of his duty to the child intrusted to his care, brought about by his absorption in watching a passing train, did not constitute such an excuse on the part of its custodian as could exculpate plaintiff of the charge of contributory negligence.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

ACTION by Joseph F. Conway, Sr., against the Monidah Trust, a corporation, and others: From a judgment for plaintiff and an order denying them a new trial, defendants appeal. Re-

The question of unexplained presence of unattended child *non sui juris* in place of danger as *prima facie* evidence of negligence of parents is discussed in note in 16 L. R. A. (n. s.) 395,

versed and remanded, with directions to enter judgment for defendants.

*Mr. Joseph J. McCaffery* and *Mr. James E. Murray,* for Appellants, submitted a brief; *Mr. Murray* argued the cause orally.

The custodian was guilty of contributory negligence and assumed the risk of injury to the child. Such neglect on the part of the custodian, where the facts are conceded, constitutes contributory negligence and assumption of risk as a matter of law, and bars recovery. (*Harrington* v. *Butte A. & P. Ry. Co.,* 37 Mont. 169, 174, 16 L. R. A. (n. s.) 395, 95 Pac. 8.) A father has no right to expose a child to such dangers, and if he or a custodian of the child, who stands in the place of the father, so exposes the child to danger, there is a failure in the performance of this duty, which constitutes negligence. The security of the community, and especially of children, demands the assertion of this doctrine. (*Glassey* v. *Hestonville etc. Ry. Co.,* 57 Pa. St. 172; *Grant* v. *Fitchburg,* 160 Mass. 16, 39 Am. St. Rep. 449, 35 N. E. 84; *Johnson* v. *Reading City Pass. Ry.,* 160 Pa. St. 647, 40 Am. St. Rep. 752, 28 Atl. 1001; *Westerberg* v. *Kinzua Creek etc. R. Co.,* 142 Pa. St. 471, 24 Am. St. Rep. 510, 21 Atl. 878; *Apsey* v. *Detroit etc. R. Co.,* 83 Mich. 432, 47 N. W. 319; *Atlanta & C. etc. Ry. Co.* v. *Gravitt,* 93 Ga. 369, 44 Am. St. Rep. 145, 26 L. R. A. 553, 20 S. E. 550; *Wolf* v. *Lake Erie etc. Ry. Co.,* 55 Ohio St. 517, 36 L. R. A. 812, 45 N. E. 708; *Pollack* v. *Pennsylvania R. Co.,* 210 Pa. St. 634, 105 Am. St. Rep. 846, 60 Atl. 312; *Pratt Coal & Iron Co.* v. *Brawley,* 83 Ala. 371, 3 Am. St. Rep. 751, 3 South. 555; *Smith* v. *Hestonville etc. Ry. Co.,* 92 Pa. St. 450, 37 Am. Rep. 705; *Bamberger* v. *Citizens' St. Ry. Co.,* 95 Tenn. 18, 49 Am. St. Rep. 909, 28 L. R. A. 486, 31 S. W. 163; *Ploof* v. *Burlington Traction Co.,* 70 Vt. 509, 43 L. R. A. 108, 41 Atl. 1017.) The unnecessary exposure of plaintiff's child to known danger was in itself an act of negligence on the part of the custodian, which will bar recovery. (*La Fayette & Ind. R. R. Co.* v. *Huff-*

*man,* 28 Ind. 287, 92 Am. Dec. 318; *Pittsburgh etc. Ry. Co.* v. *Vining's Admr.,* 27 Ind. 513, 92 Am. Dec. 269.)

It seems to be the rule that a parent who brings an action in his own right for the death of his intestate will not be allowed to recover if his own negligence contributed to the death, in the absence of wanton negligence or willful injury on the part of the defendant; the reason assigned being that a person should not profit by his own wrong. (*Nashville Lumber Co.* v. *Busbee,* 100 Ark. 76, 38 L. R. A. (n. s.) 754, 139 S. W. 301; *Scherer* v. *Schlaberg,* 18 N. D. 421, 24 L. R. A. (n. s.) 520, 122 N. W. 1000; 29 Cyc. 555.) A parent is responsible for the negligent and wrongful acts of the person to whom he intrusts the custody and care of his minor child. (*Pratt Coal & Iron Co.* v. *Brawley,* 83 Ala. 371, 3 Am. St. Rep. 751, 3 South. 555.)

When the facts are undisputed and unquestionably disclose negligence on the part of plaintiff, it is the duty of the court to so declare as a matter of law. (*Colorado & S. R. Co.* v. *Reynolds,* 51 Colo. 231, 116 Pac. 1043; *Schultz* v. *Chicago etc. Ry. Co.,* 67 Wis. 616, 58 Am. Rep. 881, 31 N. W. 321; *Johnson* v. *Rio Grande etc. Ry. Co.,* 19 Utah, 77, 57 Pac. 17; 29 Cyc. 631; *Molt* v. *Northern Pacific R. Co.,* 44 Mont. 471, 120 Pac. 809; *Zvanovich* v. *Gagnon & Co.,* 45 Mont. 180, 122 Pac. 272.)

*Mr. Peter Breen* and *Mr. H. K. Jones,* for Respondent, submitted a brief, and argued the cause orally.

The fact that Maddock, the custodian of the child, knew that there were holes upon the mining claim, and the fact that he took it thereon and allowed it to play for a moment or so, is not such misconduct as is prohibitory of the maintenance of this action (see cases cited in note 20, appended to section 327, 1 Thompson on Negligence; also section 321 *et seq.*); the fact that Maddock did not attend it for a minute or so does not preclude the right of recovery (see authorities last cited), and his thoughtlessness is not such an act as bars a recovery, as a matter of law,—it being a fact element which

the jury may take into consideration, with all the facts in the
case in determining the question.    (*Dan* v. *Citizens' St. R. Co.*,
99 Tenn. 88, 41 S. W. 339.)   In order to charge Maddox with
contributory neglect as a matter of law, his acts or omissions
must have been a proximate or contributing cause of the injury
(*Stewart* v. *Pittsburg etc. Copper Co.*, 42 Mont. 200, 111 Pac.
723), and from the facts the court could not so declare.    His
testimony is that he did not appreciate the danger, otherwise
he would never have taken the children there; that at the time
of the happening of the accident his mind was absorbed.    The
question of cause, as well as the question of neglect, under such
circumstances was one wholly for the determination of the jury,
and the jury having passed upon the misconduct alleged, ad-
verse to appellants' view, the question is not subject to review.
(*Dwyer* v. *Salt Lake City*, 19 Utah, 521, 57 Pac. 535; *Ferrell*
v. *Dixie Cotton Mills*, 157 N. C. 528, 37 L. R. A. (n. s.) 64,
73 S. E. 142; *Harrington* v. *Butte A. & P. Ry. Co.*, 37 Mont.
169, 174, 16 L. R. A. (n. s.) 395, 95 Pac. 8.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

On the evening of July 19, 1911, Joseph F. Conway, Jr., age
seven, and his sister, age six, by consent of their parents, were
taken by Wm. Maddock on to the Tzarena mining claim, owned by
the Monidah Trust and located near the limits of the city of
Butte.    While on the claim, Joseph F. Conway, Jr., fell into
an unguarded shaft and was injured.    The facts of the case
are detailed at length in *Conway* v. *Monidah Trust*, 47 Mont.
269, L. R. A. 1915E, 500, 132 Pac. 26, and 51 Mont. 113, 149
Pac. 711—the case in which the child recovered damages for his
own injuries.   In this action the father seeks damages for the
loss which he (the father) sustained by reason of the diminished
earning capacity of the boy from the date of the injury until
he should reach the age of twenty-one.

Upon the trial Maddock, the custodian of the child at the time
of the accident, testified as a witness for the plaintiff.    On

cross-examination he said: "I was familiar with that ground before I went out there, for three or four years. I walked ahead of the children about twenty feet or so; I couldn't exactly tell you right now. I knew that the shafts were there and open prior to that time. I went up and sat on the ledge of rocks and let the children play around picking flowers. I called to them to come up; my back was turned to them. The two of them was coming up at this time. They had been playing around there two or three minutes before I called to them. They were there for sufficiently long period of time to permit me to go up and sit upon the ledge of rocks and take out my pipe. I filled my pipe and lit it, and while I sat down for a smoke, I observed the train coming along, and at that moment I called for the children to come up. The children were down around these shafts during all the time it took me to do these things. They were about twenty feet or less than twenty feet north of this shaft when I called them. Of course, I didn't think they would run near the shaft. If I did, I wouldn't have brought them there at all. I never gave it a thought. I certainly knew the shafts were there. I walked all over that place several times, but was not giving it a thought at the time. My mind was absorbed for the time being in the Chicago & Milwaukee railroad train coming in, and I didn't give a thought to the danger that the children might encounter around these shafts. * * * I remember at the last trial that the boy testified that he was picking flowers, and that he made a run to get a flower on the other side of the shaft, and that he wasn't running up there to see me at all. * * * If he had observed where he was going, he would have seen and avoided the shaft. I knew that he was standing near the northeast corner of the shaft at the time I called to him. The shaft lay between me and the boy at the time I called for him; it was pretty near in line north; in a direct line between myself and the boy. He was a little shade to the east, and if he attempted to come directly to me, without going around the shaft, he would be in danger of running into the shaft. I knew that at the time I called him, but didn't give

it a thought; didn't think anything about the shaft. At the time I went there and left the boy around the shaft, I had complete knowledge of all these shafts being open and exposed there, and I certainly knew of the danger that the children might encounter with reference to falling down these shafts, but never did think anything about it. I wouldn't have gone there if I thought that."

The same witness further testified in answer to direct and leading questions by plaintiff's counsel, as follows:

"Q. Did you ever see anybody else up in that vicinity—children, men and women, and so forth?

"A. Oh, yes; there have been three or four go out Sundays and sit around there.

"Q. Men, women and children?

"A. Yes, sir. I see where they were picnicking—used to have fires out there or something. . * * *

"Q. You frequently saw other people—other parents and other children—there, doing just as you did with those children on that occasion, did you not, prior to this time and while those shafts were exposed and uncovered?

"A. Yes, sir.

"Q. Well, Mr. Maddock, did you ever see children playing, holding picnics, and building fires, and getting their dinners in the same place you and the children of Joseph F. Conway, the plaintiff here, were at that time?

"A. Well, I have seen children and grown-up people there. I see the places where they had made fires and built fires, but did not see them at times that I have been along."

The boy testified that he was running to pick a flower when he fell into the shaft; that he did not know of the existence of any shaft there, and was not warned by his father or Maddock.

At the conclusion of all the testimony the defendants moved for a directed verdict, upon the ground that the evidence disclosed contributory negligence which barred recovery. The motion was denied, and upon submission of the cause the court instructed the jury: "It is the duty of the father of an infant

child to use ordinary care and precaution to keep his child from places of danger, and if this duty has been delegated to others the father must assume responsibility for reasonable care on their part, and in this regard you are instructed that if you find from the evidence in this case that William Maddock, who had the custody of plaintiff's child at the time of the accident complained of, did not exercise ordinary care and prudence to protect said child from injury, then the negligence of such custodian, if any, is attributable to the father, and your verdict in such event must be in favor of the defendants and against the plaintiff.''

From a judgment in favor of the plaintiff, and from an order denying them a new trial, defendants appealed.

''The rule is well established that no cause should ever be [1] withdrawn from the jury unless the conclusion from the facts necessarily follows, as a matter of law, that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish.'' (*Nord* v. *Boston & Mont. C. C. & S. Min. Co.*, 30 Mont. 48, 75 Pac. 681.) But, except in cases of libel and slander, juries are the triers of facts only, and not the judges of the law; and where [2] the facts are undisputed, and are such that reasonable men can draw but one conclusion from them, the only questions presented for decision are questions of law, and to that extent the case presents in effect an agreed statement of facts. (*Helena Nat. Bank* v. *Rocky Mt. Tel. Co.*, 20 Mont. 379, 63 Am. St. Rep. 628, 51 Pac. 829.)

In *Harrington* v. *Butte, A. & Pac. Ry. Co.*, 37 Mont. 169, 16 L. R. A. (n. s.) 395, 95 Pac. 8, we considered at great length [3] the question presented, and announced the rule that the unexplained presence of a child *non sui juris*, unattended in a place of known danger, makes out a *prima facie* case of negligence on the part of the child's parents. That doctrine has never been modified or departed from. How much stronger, then, is the case where the parent is not merely passive, but actually takes a seven year old child to a place of known danger,

and, failing to give it any warning, sits by and permits the child to play about the known dangers until he is injured. The evidence establishes *prima facie* that Maddock was negligent, and the burden was then upon the plaintiff to acquit him of the attribution. In this he failed. Maddock will not be heard to say: "I was merely doing what a few other criminally negligent people did"; or, "I knew the danger, but I did not think about it." It is no excuse for the want of ordinary care that carelessness [4] is general about the matter involved or at the place of the accident. Custom never exonerates from the imputation of negligence. "The standard is not what men ordinarily do under like circumstances, but what reasonably prudent and careful men, having regard for the rights and safety of others, do under like circumstances." (*Kinsel* v. *North Butte Min. Co.*, 44 Mont. 445, 120 Pac. 797.)

This case does not bear any analogy to one where the person, [5] apparently delinquent has acted in an emergency, or failed to act because he was absorbed in the discharge of his principal duty. The evidence is uncontradicted, and the circumstances are unexplained and inexplicable, except upon the bald assumption that Maddock was so absorbed in his pipe and in watching a train that forgetfulness of the duty he owed to the helpless children was excusable. In *Cummings* v. *Helena & L. S. & R. Co.*, 26 Mont. 434, 68 Pac. 852, Mr. Justice Pigott in his inimitable style most forcefully stated the rule as follows, in a case where the facts were sufficiently alike those now before us to make the observations particularly pertinent: "The plaintiff cannot recover if he could have avoided the injury by exercising ordinary care and caution. That he may * * * have temporarily forgotten the risk is of no moment; he was charged with knowledge and understanding of such dangers and risks as he might have comprehended and appreciated by using ordinary care; if he forgot, he was negligent, for he was bound to remember. The defendant was not required to take better care of the plaintiff than the plaintiff was of himself; the measure of the duty of each was ordinary care. The negligence of the defendant did

not dispense with the necessity of the plaintiff's using ordinary care. Such has been the unbroken rule since *Butterfield* v. *Forrester*, 11 East, 60, was decided, to the present day. By his own careless act in getting under the ledge without inspecting or sounding it, he voluntarily exposed himself to the risk of injury. The accident would not have happened had the plaintiff exercised due care and caution.''

This leaves nothing further to be said. The evidence discloses negligence upon the part of plaintiff's custodian, without which the accident could not have occurred. Plaintiff must assume responsibility for that negligence and cannot recover. To permit recovery would be to reward him for his own wrongful act. The motion for a directed verdict should have been sustained.

The judgment and order are reversed, and the cause is remanded with directions to enter judgment in favor of the defendants for their costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.