DAVIDSON, TRUSTEE, APPELLANT, v. STAGG, RESPONDENT.

(No. 7,030.)

(Submitted April 8, 1933. Decided May 8, 1933.)

[22 Pac. (2d) 152.]

---

*Mr. Walter L. Pope* and *Mr. S. P. Wilson,* for Appellant, submitted a brief; *Mr. Wilson* argued the cause orally.

*Mr. Joseph J. McCaffery* and *Mr. J. B. C. Knight,* for Respondent, submitted a brief.

MR. JUSTICE STEWART delivered the opinion of the court.

Appellant, plaintiff below, instituted this action as trustee, appointed by the district court of Deer Lodge county, against the respondent, defendant below. The suit is for the possession of certain jewelry described in the complaint, or for the value thereof in the sum of $7,200. Plaintiff pleaded that he

was appointed trustee by the court on October 15, 1931, to succeed J. P. Stagg, deceased, alleged to have been trustee of the property involved. The appointment and the action in the present form came about by reason of a decision of this court involving the same subject matter. (*Stagg* v. *Stagg,* 90 Mont. 180, 300 Pac. 539, 543.)

The previous action was begun by John A. Stagg, as administrator of the estate of his mother, Mary Elizabeth Stagg, deceased, and was against the same defendant. That action was upon an implied contract to recover the value of the property. This court held that the plaintiff had no right to the present possession of the property and could not maintain the action, saying: "But a trust will not fail because of want of a trustee. In such a case the court will appoint a trustee to carry out the trust."

The facts upon which plaintiff relies here are pleaded in his complaint with particularity. Aside from the appointment of plaintiff, the facts as pleaded are substantially the same as those detailed in the previous opinion, and it is therefore unnecessary to repeat them here.

The defendant in her answer admitted the death of Mary Elizabeth Stagg and the relationship existing between the interested parties. She also admitted plaintiff's demand for the jewelry and her refusal to deliver; she denied the gift *causa mortis,* and other allegations of the complaint, and by way of special defenses pleaded that the action was barred by the statutes of limitation and by laches.

The original action terminated in a nonsuit. The present case, however, went to the jury on evidence adduced by both parties, and under the instructions of the court.

In both cases the basic contention was that a ·gift *causa mortis* was made by Mary Elizabeth Stagg, wife of J. P. Stagg and mother of John A. and Ira Stagg, a few hours before her death on January 19, 1919. The only evidence adduced in the original trial relative to this gift *causa mortis* was the testimony of Willim Stagg, daughter-in-law of Mary Elizabeth Stagg and wife of John A. Stagg. In the original action no

evidence was introduced either in corroboration or denial of the testimony of Willim Stagg on this point. In the instant case it was stipulated between the parties that in view of the fact that the issues involved in this case were in many respects the same issues involved in the previous action, depositions and testimony of certain witnesses given in the previous cause should be received upon the trial of this case with the same effect as though the witnesses were present testifying in the case. The testimony of Willim Stagg was introduced under the stipulation. Therefore it will be noted that in the matter of the gift *causa mortis*, the testimony in the two cases was identical.

Briefly, the testimony of Willim Stagg was that on January 19, 1919, at Los Angeles, California, Mary Elizabeth Stagg, her mother-in-law, a resident of Anaconda, was in possession of the jewelry in question, claiming it as her own; that Mary Elizabeth Stagg was seriously ill and was taken to a hospital, where she submitted to an operation and died within a few hours thereafter; that just before Mary Elizabeth Stagg went to the hospital for the operation she called the witness to her bedside, spoke of the possibility of her death, gave to her the jewelry in question, and at the same time said, "Give this to Dad Stagg, and he is to keep it for the boys until they are old enough to appreciate it." She also said that at the time Mary Elizabeth Stagg made this statement, the latter was critically ill and was about to have an operation, and that within a few hours thereafter she died. Willim testified further that after the death of Mary Elizabeth Stagg, in compliance with her request she delivered the jewelry to J. P. Stagg and communicated to him the directions given her by Mary Elizabeth Stagg, and that "J. P. Stagg accepted the jewelry on those conditions."

In *Stagg* v. *Stagg*, supra, the evidence stood alone on the matter of the gift *causa mortis*. While in the instant case evidence was introduced by the defendant on other points, none was introduced on this particular point. So the matter stands in the instant case as it did in the previous one. In

that case the court said: "The trusteeship was accepted first by Willim Stagg, and later by James P. Stagg."

The specifications upon which error is predicated here have to do with the refusal to give an offered instruction and the giving of other instructions over objections of the plaintiff.

The first specification of error arises from the refusal of ▮ the court to give an instruction offered by the plaintiff, to the effect that the evidence established the gift *causa mortis* and the trusteeship.

The second specification is based on the giving of an instruction designated No. 18 C 1, the first part of which is as follows: "Among the issues of fact to be decided by you in this case the court calls your attention to that of whether there was or was not a gift *causa mortis* made by the mother Mary Elizabeth Stagg of the property in question to her two sons, Ira J. and John A. Stagg. A gift *causa mortis* is elsewhere defined in these instructions. If there was not a gift *causa mortis* made as alleged in the complaint and within such definition, then it is not necessary for you to go further in your deliberations, and your verdict should be for the defendant."

It will thus be seen that the position of the plaintiff on the refused instruction, and the instruction given, really amounted to a demand upon the court to withhold from the jury the matter of deciding whether there was or was not a gift *causa mortis* actually made.

The contention of the plaintiff was correct in this respect. There was no evidence in the record on the question, except that of Willim Stagg, so that the matter of the gift stood uncontradicted; and the submission of the proposition to the jury as a question of first importance was prejudicial error.

The instruction is long and involved. It contains several paragraphs and deals with different phases of the case. The first subject for decision, however, called to the attention of the jury, is the question of the actual making of the gift *causa mortis;* and that feature of the instruction is made paramount by the suggestion that a negative answer may be decisive of

the case and that thereafter it might not be necessary for the jury to go further in its consideration of the issues.

The matter of the gift *causa mortis* under the circumstances became one of law, under section 9325, Revised Codes of 1921, which reads as follows: ''An issue of law must be tried by the court, unless it is referred upon consent.'' This court in an early case said: ''Where, in a civil action, the facts are admitted or undisputed, or where the evidence is 'all in one direction,' the only questions for decision are those of law. There being no conflict in the evidence, and the proofs being such that reasonable men could come to but one conclusion upon them, the case presents, in effect, an agreed statement of facts.'' (*Helena Nat. Bank* v. *Rocky Mountain Tel. Co.*, 20 Mont. 379, 51 Pac. 829, 834, 63 Am. St. Rep. 628; *Bean* v. *Missoula Lumber Co.*, 40 Mont. 31, 104 Pac. 869; *Consolidated Gold Min. Co.* v. *Struthers*, 41 Mont. 565, 111 Pac. 152; *Conway* v. *Monidah Trust*, 52 Mont. 244, 157 Pac. 178; *Old Kentucky Distillery* v. *Stromberg-Mullins Co.*, 54 Mont. 285, 169 Pac. 734; *McIntyre* v. *Northern Pacific Ry. Co.*, 56 Mont. 43, 180 Pac. 971; *Stiemke* v. *Jankovich*, 72 Mont. 363, 233 Pac. 904.)

The instruction in another paragraph advised the jury concerning an alleged gift of the jewelry by J. P. Stagg to defendant, and concerning the relation of the statute of limitations to the cause if such gift was made. This part of the instruction is in conflict with another instruction given over plaintiff's objection, No. 14 B 6. The last-mentioned instruction told the jury that if J. P. Stagg gave the jewelry to the defendant ''in consideration of a mutual promise of marriage,'' afterwards consummated, and that notice or knowledge thereof had come to Ira J. and John A. Stagg jointly within the period of the statute of limitations, two years prior to October 6, 1931, the time of the institution of this action, the verdict should be for the defendant. This instruction submitted an issue that did not exist under the pleadings or the evidence. The answer of the defendant alleged that J. P. Stagg did give the jewelry to defendant ''as

278

and for an engagement present.'' Defendant testified: ''He gave me this jewelry as an engagement gift.'' Thus it will be seen that defendant never asserted that the jewelry was given to her by J. P. Stagg in any other manner than as an outright unconditional gift or present.

There is an important legal distinction between the two theories submitted to the jury. The gift theory pleaded in the answer and asserted by defendant on the stand merely constituted a voluntary transfer of the property without consideration or compensation. (13 R. C. L. 923.) The other theory involved the delivery of the property for a valuable consideration. Marriage is a valuable consideration. (1 Williston on Contracts, 229, 230.)

The nature of the transfer of the jewelry was important. Consideration or the lack thereof in such matters is recognized by section 7900, Revised Codes 1921, as follows: ''Everyone to whom property is transferred in violation of a trust holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration.''

The submission of both the theories certainly had the effect of confusing the jury, and in addition it afforded the jury the opportunity of finding that the alleged transfer of the property from J. P. Stagg to defendant was for a valuable consideration and therefore free from the restrictions of the statute.

Since this case must go back for a new trial, we deem it necessary to determine the more important questions relative to the operation of the statute of limitations.

Under the gift *causa mortis,* J. P. Stagg was constituted trustee of the jewelry for the benefit of his sons. It is, of course, elementary that in this case the trustee, Davidson, has no greater rights than the *cestuis que trustent,* and that if they are bound by the statute of limitations he is likewise bound. The rule is well settled that as between a trustee and a *cestui que trust* ''the statute of limitations does not begin to run * * * until the trustee begins to act in hostility to his continuing obligation and, even where there is a

repudiation of such obligation, the repudiation does not set the statute in motion until brought home to the *cestui que trust."* (*First State Bank* v. *Mussigbrod,* 83 Mont. 68, 271 Pac. 695, 704; Perry on Trusts, sec. 863; 17 R. C. L. 796.) The reason for this rule is that the possession of the trustee is the possession of the beneficiary, and hence his possession is not adverse to the equitable title of the latter, but consistent with it. (17 R. C. L. 797.)

The question whether the statute of limitations ran in favor of J. P. Stagg is then dependent upon the fact, to be determined by the jury from the evidence whether or not Stagg did in fact repudiate the trust; and if he did repudiate it, whether such repudiation was brought to the knowledge of the beneficiaries of the trust.

In this case, however, the more important question relates to the operation of the statute as to Barbara Elizabeth Stagg, the defendant. It is clear that when defendant took the property from J. P. Stagg by way of gift, if she did, she became an involuntary trustee thereof under the terms of section 7900, supra.

There is a conflict in the authorities as to the time when the statute of limitations begins to run as against an involuntary trustee, some holding that it commences to run at the time the relationship of involuntary trustee and *cestui que trust* is created by law (see 17 R. C. L. 794; Perry on Trusts, 7th ed., sec. 865); other authorities, however, hold that one who takes property from the trustee in violation of his trust stands in the shoes of the trustee and cannot assert the bar of the statute unless he repudiates the trust, and knowledge of such repudiation is brought home to the *cestui que trust.* (*Marshall's Estate,* 158 Pa. 285, 22 Atl. 24; *Hammons* v. *National Surety Co.,* 36 Ariz. 459, 287 Pac. 292; *Pennsylvania Co.* v. *Ninth Bank & Trust Co.,* 306 Pa. 148, 158 Atl. 251; *Hall* v. *Windsor Sav. Bank,* 97 Vt. 125, 121 Atl. 582, 124 Atl. 593; *Duckett* v. *National Mechanics' Bank,* 86 Md. 400, 38 Atl. 983, 63 Am. St. Rep. 513, 39 L. R. A. 84.)

We believe that under the circumstances of this case the latter rule is more in accord with the principles of justice. We do not believe that a trustee should be permitted to deliver the trust property to a third party, and by that breach of his obligation, alone and without notice, start the statute running in his favor, as against the *cestui*, who might thus lose his property while in entire ignorance of the transaction.

Under the terms of the trust, the beneficiaries John A. and ▮ Ira J. Stagg were to get the property when "they are old enough to appreciate it." The determination of the arrival of this period was left to the discretion of the trustee, J. P. Stagg. Defendant claims that the boys "were not entitled to the property until they were old enough to appreciate it," and that since J. P. Stagg did not exercise his discretion in that respect, there was never any right of action in the *cestuis*. If, however, J. P. Stagg did in fact make a gift of the jewelry to the defendant as claimed, a cause of action accrued immediately upon the discovery thereof by the *cestuis*. This cause of action was not dependent upon the exercise of the discretion vested in J. P. Stagg. Perry on Trusts, seventh edition, page 858, declares the following to be the law: "The discretion of the trustee will not be controlled or questioned so long as he is not guilty of bad faith or abuse of his power and trust; but it is difficult if not impossible to create in the trustee such unbounded power as to preclude a court of equity from controlling him when he acts fraudulently, or palpably abuses his power, as by unreasonably refusing to exercise it, or undertaking to exercise it in an unreasonable manner."

This rule is well supported by authorities to the effect that upon an abuse of discretion by the trustee, the *cestuis* may upon petition to a court of equity secure either the removal of the trustee or compel the execution of the trust, in the discretion of the court. (*Keating* v. *Keating*, 182 Iowa, 1056, 165 N. W. 74; *Collister* v. *Fassitt*, 163 N. Y. 281, 57 N. E. 490, 79 Am. St. Rep. 586; *Godfrey* v. *Hutchins*, 28 R. I. 517, 68 Atl. 317; *Cushman* v. *Cushman*, 102 App. Div. 377, 92 N. Y. Supp. 833.)

The fact, if it is a fact, that the jewelry in question, while the subject of the trust, may have been in the physical possession of the defendant, wife of J. P. Stagg, trustee, does not *ipso facto* establish a repudiation of the trust. Such matter constitutes a fact issue for the consideration of the jury under proper instructions of the court.

The judgment is reversed, with direction to grant a new trial.

Mr. Chief Justice Callaway and Associate Justices Angstman, Matthews and Anderson concur.

Rehearing denied May 22, 1933.