SAMPLE, ADMINISTRATRIX, RESPONDENT, *v.* MURRAY HOS-PITAL, APPELLANT.

(No. 7,580.)

(Submitted October 14, 1936. Decided November 4, 1936.)

[62 Pac. (2d) 241.]

*Mr. J. A. Poore,* for Appellant, submitted a brief and argued the cause orally.

*Mr. N. A. Rotering,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Silver Bow county. The action was instituted by Josie Sample, as administratrix of the estate of Bert F. Sample, deceased. The cause was tried by the court with a jury, and a verdict of $3,000 was returned in favor of plaintiff.

A motion was made to strike out certain parts of the complaint; a demurrer was interposed, and finally a motion for an instructed verdict was made. Thereafter the jury was instructed and returned its verdict. Judgment was entered; a motion for a new trial was made and overruled; and an appeal was perfected to this court by defendant.

The essential facts are as follows: In April 1933, Bert F. Sample, husband of plaintiff, was in the employ of the Anaconda Copper Mining Company as a watchman at the Orphan Girl mine in Butte. He was 67 years of age and had been a miner in the Butte mines for many years; he died on April 24. The cause of his death was terminal pneumonia, superinduced by silicosis, or miner's consumption.

It appears that a fire occurred immediately adjacent to the residence of the deceased on April 8. This fire destroyed some neighboring buildings and to some extent damaged the house of the deceased; the family, however, continued to occupy the house, or at least a part of it. During the progress of the fire, deceased exposed himself to the cold and other adverse conditions, and as a result contracted the cold which later progressed into pneumonia and caused his death. After the fire he worked as watchman until the 11th of the month, when his cold became so bad that he went to bed upon returning from work. He was in bed a few days before a doctor was called. On the 14th the plaintiff called the Murray Hospital, reported the sickness, and asked that a doctor be sent.

Deceased was entitled to medical and hospital services by virtue of a contract existing between his employer and the defendant Murray Hospital. This contract was entered into in accordance with the permissive provisions of the Montana Workmen's Compensation Act, section 2907 et seq., Revised Codes. Under the terms of the contract the hospital company agreed to furnish medical and hospital services to the employees of the employing company for the sum of $1 per man per month. The sum was deducted from the wages of all employees by the mining company and by it paid to the hospital company. It is admitted that the deceased had paid for and

was entitled to all of such benefits during all of the time of his last illness.

Upon receiving the call, the hospital officials sent Dr. McHeffie, a member of the Murray Hospital staff, to attend the sick man. He found him suffering from "silicosis pulmonary," and characterized the condition as the fourth stage of silicosis. He testified that the patient was suffering from a very advanced case of miner's consumption. The doctor called at intervals after that time until the death of the deceased on the 24th. On the 20th, or shortly before, deceased requested plaintiff to go to the Murray Hospital and ask that he be admitted there as a patient. It appears that this request was predicated upon the belief of deceased and members of his family that the house was not a fit place of occupancy for him in his then condition. Members of the family testified that while the house had not been destroyed, it had been injured by fire and water and that there was a generally damp condition of the house itself and the contents, and particularly of the walls and bedclothing. The request was made of a Mr. Flood, an official of the hospital. Mr. Flood advised plaintiff that deceased could not be received into the hospital without the advice and consent of his physician; he promised to take the matter up with Dr. McHeffie and advise the plaintiff later. It appears that as a result of the application, Dr. McHeffie did go to the house on the evening of the 20th; he examined the patient and finally decided that he should not be removed to the hospital. There is some controversy as to just what occurred at that time. The doctor claims that deceased was in such a condition—a state of partial coma—that it was unwise and unsafe to move him, and that therefore he did not make a favorable recommendation of the request. Members of the family and friends testified that the doctor said that the patient was getting along all right and that it was not necessary to move him. However that may be, the fact remains that he was not removed.

Apparently the doctor reported the matter with his recommendation to the hospital officials, and the hospital advised plaintiff of the result. After receiving the answer of the hos-

pital, plaintiff communicated the facts to her husband. At that time she asked him whether she should take him to St. James Hospital, another hospital in Butte, because, as she said, "I thought he ought to have hospital care." Deceased refused to submit to removal to the St. James Hospital, giving as his reason that he was paying into the Murray Hospital and that he ought to go there. Plaintiff said: "I guess that is the only reason I didn't take him there." She testified that she had the money, and indicated that there was no reason for failing to take him to St. James other than that he was under contract with the Murray Hospital. It appeared that St. James Hospital was a general hospital comparable in essential particulars to the Murray Hospital. It is located in Butte almost as convenient to the home of deceased as was the Murray Hospital. At that time there were many vacant beds and adequate accommodations. The chief surgeon of St. James Hospital testified at the trial. He explained that the St. James Hospital was an eleemosynary institution, paid no taxes, and received all patients regardless of whether they had money or not. He said that there never had been refusal on the part of the hospital to admit a patient, and that if application had been made by or on behalf of the deceased, he would have been admitted.

The complaint contained the usual formal allegations, and recited the general fact conditions hereinbefore outlined. The cause of action was based specifically upon the refusal of the Murray Hospital to admit deceased as a patient, all of which was alleged to have been in defiance and violation of the existing contract so to receive employees of the mining company. There were also allegations as to the conditions in the home. A motion was interposed to strike these allegations from the complaint. It was denied. This matter constitutes one of the assignments of error.

In the course of the trial the witnesses for plaintiff testified as to the unsafe condition of the home as a result of the fire and the water used to extinguish it.

The real issue in the case involved the application of deceased for admission into the hospital and the refusal to receive him. Defendant urged at all times that it was the duty of deceased, when refused admission into the Murray Hospital, to seek hospitalization elsewhere, particularly at the St. James Hospital.

While the complaint was formulated upon the theory of general damages, as the trial progressed the matter finally resolved itself into a controversy involving the additional pain and suffering alleged to have been endured by deceased by reason of the failure of the Murray Hospital to receive him. That in reality was one of the main issues submitted to the jury.

The court instructed the jury that no damages could be assessed by reason of the death of deceased, and that the only damages they were authorized to assess were those which would have compensated the deceased for additional pain or suffering endured by him between the time he was refused medical care and hospital accommodations and the time he died, if in fact such accommodations were refused.

A motion for an instructed verdict in favor of defendant was made at the close of all of the evidence and overruled.

Numerous designations of error are designated; they, however, involve but a few propositions. Defendant, as appellant here, strenuously urges that the motion for an instructed verdict should have been sustained, and further urges that other errors occurred in the instructions given to the jury.

The motion for an instructed verdict directed the attention of the court to the contention that the cause then only presented questions of law; that the evidence was insufficient to sustain the verdict; that the damages, if any, recoverable could not exceed those described in section 8704, Revised Codes, viz., that they could not be for a greater amount than deceased could have gained by a full performance of the contract; and that there was no evidence that the failure of defendant to furnish hospitalization was the proximate cause of the death of deceased.

After the motion for an instructed verdict was overruled, the court then proceeded to settle the instructions. The defendant made elaborate and extensive objections to all of the important instructions, particularly to instructions Nos. 1, 5 and 6. Instruction No. 1 was a stock instruction and is not very important here.

Instruction No. 5 tendered the issue as to the request of deceased for admission to the hospital and the alleged refusal, and left that matter to the jury for decision as a condition precedent to finding any verdict for damages in favor of plaintiff.

Instruction No. 6 in a sense did the same thing, but not quite so emphatically. The specific objections to these instructions were somewhat lengthy and elaborate; many grounds of objection were assigned. It is unnecessary to reproduce the instruction or objections thereto.

It seems to us that the vital and decisive question involved in this appeal arises out of the Workmen's Compensation Act (Rev. Codes, secs. 2816 et seq.). It must be borne in mind that the contract under which deceased claimed hospitalization was a contract entered into between the employer and the Murray Hospital. This contract was entered into by virtue of the Compensation Act and in conformity with the provisions thereof; consequently the Act itself became a part of the contract. The contract must be construed in the light of the true intent and purpose of the Act. (See *Murray Hospital* v. *Angrove*, 92 Mont. 101, 10 Pac. (2d) 577.)

It is urged by defendant that in view of the fact that the contract was made under and in accordance with the Compensation Act, the case could not be tried as an ordinary damage case, but was controlled by the provisions of section 2910, Revised Codes, a section of the Compenation Act, which reads as follows: "In any action to recover damages for any act connected with the treatment or care, or malpractice in treatment or care, of any sickness of or injury sustained by an employee, the question of whether or not due care was given by the defendants shall be a question of law for the court."

We are impressed by this contention. An examination of the provisions of the short statute discloses that in actions involving damages on account of lack of due care, the questions —that is, the issues—shall be questions of law for the decision of the court. If the section means what it says and if this court was right in the *Angrove Case,* supra, that the Workmen's Compensation Act became a part of the contract, then the issue involving the lack of care involved in the application of deceased to be admitted into the hospital, and the refusal of the hospital to receive, was improperly submitted to the jury. That question was for the court to decide. It was specifically made a question of law.

Section 9325, Revised Codes, provides: "An issue of law must be tried by the court, unless it is referred upon consent." A careful study of the record discloses that, whatever may have been the defects in the objections to the specific instructions certainly it cannot be inferred that the matter was referred to the jury by the consent of the parties.

This court has held that undisputed questions of fact should not be submitted to the jury. In the case of *Davidson* v. *Stagg,* 94 Mont. 272, 22 Pac. (2d) 152, 153, the court reversed a judgment by reason of the fact that one of the instructions submitted an uncontroverted fact to the jury. There it was said: "Where, in a civil action, the facts are admitted or undisputed, or where the evidence is 'all in one direction,' the only questions for decision are those of law." It is true that the same condition does not exist in this case. Here the issue was made one of law for the court because of the statute, and not because the facts in the case were undisputed as in the *Davidson-Stagg Case.* This court followed the principle enunciated in the *Stagg Case* on several occasions before and since that decision, and recently in the case of *Sullivan* v. *Roman Catholic Bishop,* ante, p. 117, 61 Pac. (2d) 838, wherein other cases recognizing the rule were cited.

There is, however, another element involved in the principle just announced. In all of the cases supporting the principle stated in the *Sullivan Case,* this court held that it was in as

good a position as was the district court to decide the question of law. That principle was true in those cases, because the questions presented were intrinsically questions of law, and therefore for the decision of the court, and were not made questions of law for the decision of the court by specific statute—by arbitrary legislative mandate—as here. Here it would be impossible to follow the reasoning of that principle to an extreme degree, because the issue in this case was made a question of law for the decision of the court by statute, but in reality it does involve some fact elements. It does require consideration, an exercise of judicial discretion and decision. It involves the question whether or not the Murray Hospital wrongfully and erroneously, and in contravention of its contract, refused to receive deceased, or whether, as the doctor testified, it was unwise to move him. If the hospital authorities and the doctor illegally refused to receive the deceased, then, of course, such refusal constituted a just basis for the imposition of damages; but if, on the other hand, the refusal to move the patient was predicated on sound and reasonable grounds, no violation of the contract occurred. This very matter was for the decision of the court, and therein lies the distinction between the line of cases we have mentioned and the instant case. Nevertheless, the requirement of the statute that the issues of law should be tried by the court remains, and it was error to confuse the issues of law which were for the consideration of the court, with the issues of fact which were for the consideration of the jury. The case of *Davidson* v. *Stagg,* supra, is directly in point on that question.

Respondent, in an endeavor to avoid the effect of the above provision of law, asserts that the objections to the instructions were not specific enough to point out the particular point involved. We cannot agree with counsel. This court is committed to the rule that it will not reverse a judgment by reason of any errors in the instructions which were not specifically pointed out and excepted to in the settlement of the instructions. In the case of *First National Bank* v. *Perrine,* 97 Mont. 262, 33 Pac. (2d) 997, 999, this matter was discussed at

some length. There the court called attention to the fact that the rule should not be extended to require the party interposing the objection to state the correct principle of law involved in order to avail himself of his objection on appeal. We think that statement is applicable here.

Further, in the instant case the error involved in the instruction lay in the fact that the proposition submitted to the jury by the court was not properly for decision of the jury at all. Counsel for the defendant in enumerating his objections to the instruction reiterated and emphasized the fact that the question of the refusal of the hospital to receive the patient, whether the hospital was right or wrong in doing so, could not legally be submitted to the jury. It is true that the reasons he assigned did not specifically point out the proper course to be pursued; in other words, as this court said in the *Perrine Case,* supra, "the party making the objection may himself be in error as to the law upon the point, but that fact should not destroy the force and effect of his objection if the instruction was actually erroneous in the particular mentioned." Here the objections were that it was illegal to submit the phases enumerated to the jury, but the objections did not carry with them or contain the correct principle of law which should have been employed by the court.

We think that the submission of the issue as to the violation of the contract to the jury was error, and that the objections to the instructions were sufficient to call the attention of the court to such error. We believe that the motion for a new trial should have been sustained, and that a new trial should be granted.

It is urged by appellant that the judgment should be reversed, with directions to the court to sustain the motion for an instructed verdict, and to dismiss the action. We do not believe that this should be done, because, while this court is ordinarily in as favorable a position to apply the law as is the district court (*Sullivan* v. *Roman Catholic Bishop, etc.,* supra), yet, as we have observed, the issues of law here for the decision of the court are different from the issues in the other cases we

have mentioned. There the questions were purely law questions because they were inherently, intrinsically, questions of law. Here the question is a law question because it is made so by the statute. Here the duty is imposed upon the district judge to try out the question, and in doing so it is necessary that he should hear evidence. It follows that the district judge is now and will be in a better position than this court to decide the questions involved in section 2910, Revised Codes. He may have the advantage of hearing the witnesses testify and of observing their demeanor on the witness-stand. It is obvious that he will be required to make a decision as to the legality or illegality of the acts of the hospital authorities in failing or refusing to take the deceased, the patient, into the hospital. As we have indicated, many considerations are involved in that proposition—considerations which the district court is naturally in a better position to understand and decide than is this court.

In view of the law as we understand it and as we have construed it in this opinion, the cause was erroneously tried, in that instructions were erroneously given and that matters of law for the decision of the court were intermingled with fact issues and submitted to the jury. The cause is remanded, with instructions to the district court to grant a new trial.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MATTHEWS, being absent, did not hear the argument and take no part in the above decision.